496 P.2d 861

Vern COUNTRYMAN and Nona Whitman, Petitioners,

v.

The Honorable Laurens L. HENDERSON, Judge of the Superior Court of Maricopa County, and Henry F. Whitman and Nona Whitman, husband and wife, Respondents.

No. 1 CA–CIV 1996.

Court of Appeals of Arizona, Division 1, Department B.

May 9, 1972.

Lewis & Roca, by Charles Crehore, and Mary M. Schroeder, Phoenix, for petitioners.

HAIRE, Chief Judge, Division 1.

In this special action in the nature of mandamus we were asked to order the trial court to appoint petitioner Vern Countryman as guardian of the persons of Henry F. Whitman and Nona Whitman, respondents. We have heretofore entered our order granting the relief requested, and this opinion sets forth the reasons therefor.

There is no dispute concerning the pertinent facts. After an appropriate hearing the trial court found that the respondents Whitman were incompent and that guardians of their estates and persons should be appointed. The trial court then appointed the Valley National Bank of Arizona as guardian of respondents' estates, but refused to appoint petitioner Countryman, a non-resident, as guardian of their persons for the sole reason that in the opinion of the trial court "the statutes of Arizona indicate a non-resident cannot be appointed as guardian of the person of an incompetent person residing in Arizona". The respondent judge has filed in this Court a brief memorandum setting forth the grounds for his order.

■ There are no Arizona statutes which expressly state that only Arizona residents can qualify as a guardian of the person in an Arizona guardianship proceeding. As a general rule, the court, when unrestrained by statute, may, when it deems it necessary, appoint a non-resident guardian of the person. 39 Am.Jur.2d, Guardian and Ward § 35, at 37 (1968). However, it is apparent from the trial court's order that the judge was of the opinion that several Arizona statutes *imply* a residence requirement.

First it is contended that A.R.S. § 14-815 is pertinent. § 14-815 reads as follows:

"All proceedings of guardians, and the administration of estates of minors and incompetent persons, shall be had in accordance with, and shall be governed by, the laws relating to estates of decedents, except as otherwise provided by law."

Since A.R.S. § 14-418 of the probate code, which deals with the administration of estates of decedents, prohibits the appointment of a non-resident administrator (except in ancillary probate), the contention is made that such prohibition is, by reason of the above-quoted § 14-815, made applicable to the qualification of guardians. We do not believe that this contention can withstand close scrutiny.

■ Looking first to the precise language of A.R.S. § 14-815, it will be noted that the statute refers to *proceedings* of guardians and *administration* of estates. In the determination of qualifications we are clearly not dealing with the administration of estates nor are we concerned with *proceedings* of guardians. The prerequisite qualifications for appointment as a guardian are not proceedings within the meaning of this statute. This can be best demonstrated by an examination of the legislative history of the statute. The present A.R.S. § 14-815 is simply a concise rewriting of the former provision, A.C.A. § 42-129 (1939). The former provision specifically listed the "proceedings" to which it applied. They included sales of property, notices of hearing, orders directing conveyances of property, accountings, and other matters relating to the general administration of an estate. This former provision did not in any sense apply to the appointment or the qualifications of the guardian. Our present § 14-815 merely simplified the language and did not change the former provision in any material way. The interpretation urged by the trial court would in effect broaden the section in a manner which was never intended. The probate code deals with proceedings and administration in an entirely separate chapter, (Chapter 5), from the chapter relating to the appointment and qualifications of executors and administrators (Chapter 4). In short, § 14-815 simply has no bearing on the question of appointment and qualifications of guardians. The California courts have rejected an identical argument made upon almost identical statutes. As stated in In re Estate and Guard-

ianship of Levy, 137 Cal.App.2d 237, 290 P.2d 320 (1955):

"Appellants concede that there is no statutory requirement that the guardian be a resident of this state but argue that 'there are other pertinent provisions of the Probate Code which appear to show what the law of this state would be were the question presented, as is the case in this instance.' They rely on section 420 of the Probate Code which requires that administrators of estates be bona fide residents of this state and section 1606 of the Probate Code which states: 'When not otherwise specially prescribed in this division, *practice and procedure* and the *making and entry of orders* under this division shall be governed by the provisions of Division III of this code, so far as they are applicable.' (Emphasis added.) An attempt upon the same grounds to defeat the appointment of a nonresident guardian of the estate of an incompetent person by applying the substantive statutory law relating to administrators was made in the case of In re Guardianship of Boutz' Estate, 24 Cal.App.2d 644, 646, at page 648, 76 P.2d 154, at page 157, where the court states: 'By virtue of section 1606 of the Probate Code appellant also attempts to read into the provisions of the Probate Code, referring to the guardianship of insane persons, the provisions of the Code relative to the appointment of * * * administrators, but such section cannot be applied here, as that section applies to matters of procedure only.' " 137 Cal.App.2d at 246–247, 290 P.2d at 326–327.

■ The trial court also relied upon A.R.S. § 14–818, subsec. 6 which provides as follows:

"A guardian may be removed by the court:

" * * * * * *

"6. For removal from the state."

We do not think that when considered in context this provision implies that only a resident should be initially appointed. Under the provisions of A.R.S. § 14–806, subsec. B it is clear that with permission of the court the guardian may fix the residence of the ward outside this state.[1]

All that § 14–818, subsec. 6 does is give the court a discretionary power to remove a guardian who removes himself or the ward from the state without permission. Again, as stated by the California court, in considering practically identical statutory provisions:

"This section not only inferentially recognizes the possibility that a nonresident on one proposing to leave the state may be appointed guardian, but authorizes the probate court to make an order fixing the residence of the minor in the place outside the state to which the guardian wishes to remove himself. Ricci v. Superior Court, supra, 107 Cal.App. 395 at page 398, 290 P. 517." 137 Cal.App.2d at 248, 290 P.2d at 327.

■ If the legislature had intended to exclude non-residents from securing appointments as guardians, it would have been easy to so state as was done in the case of administrators. However the courts have recognized that there are often legitimate cogent reasons for not doing so, because of the crucial distinctions between the duties and functions of an administrator on one hand and a guardian on the other. An administrator is interested primarily in winding up the estate of a decedent. The cardinal consideration governing the court in its appointment of a guardian for the person and estate of a ward is how to serve most effectively the best interests and temporal, moral and mental welfare of a living person. In re

1. A.R.S. § 14–806, subsec. B reads as follows:

"B. The guardian may fix the residence of the ward at any place within the state, but not elsewhere without permission of the court."

Estate and Guardianship of Levy, *supra*. In exercising his discretion, the trial judge should have wide latitude so that he may perform his statutory duty in a manner most conducive to the permanent well-being of the ward. It may sometimes be in the best interests of the ward that a non-resident be appointed either as one most closely related to him, or as one highly qualified to act and nominated by deceased parents, or as one best able to educate and support a child, or for any other significant reason that might benefit the ward. While in many instances a resident guardian may be preferred as a matter of policy, the mere fact that a prospective guardian is a non-resident should not bar the court from appointing him, when the circumstances are such that, in the court's discretion, it appears in the best interests of the ward to do so.

■ In his order, the trial judge appears to place some reliance upon the provisions of A.R.S. § 14–803.[2] This provision clearly does not make any requirement as to the residency or qualifications of a guardian. It merely provides that as between two superior courts attempting to exercise jurisdiction over the guardian, the court first appointing the guardian has exclusive jurisdiction to control him.

■ We hold that there is no absolute requirement that a person be an Arizona resident in order to qualify for appointment as the guardian of the person of an Arizona resident. Inasmuch as petitioner was admittedly otherwise fully qualified (and in fact the only person who has demonstrated a willingness to undertake the guardianship obligation), we have heretofore issued our order granting the relief requested in this special action proceeding.

EUBANK and EINO M. JACOBSON, JJ., concur.

2. A.R.S. § 14–803 reads as follows:
    "The court first appointing a guardian has exclusive jurisdiction to control him, and the exclusive jurisdiction extends to all the estate of the ward within in the state."