184 Ariz. 514 (1996)
910 P.2d 665
In re the Matter of the GUARDIANSHIP OF Francis H. KELLY, an Adult Protected Person.
Donald KELLY and Joyce Kelly, Interested Parties-Appellants,
v.
Nancy ELLISTON, Guardian-Appellee, Connie Buessing, Petitioner-Appellee, and Francis H. Kelly, an Adult Protected Person, by David W. Adams, Court Appointed Counsel for Protected Person-Appellee.
No. 1 CA-CV 94-0520.
Court of Appeals of Arizona, Division 1, Department A.
January 25, 1996.
*516 C. William Mulligan, III, Tempe, for Appellants.
Law Offices of Charles J. Dyer by Charles J. Dyer, Phoenix, for Guardian-Appellee.
Charles L. Arnold, P.C. by Wendy Schwartz Laskin, Phoenix, for Appellee Connie Buessing.
David W. Adams, II, Saskatoon, Saskatchewan, Court Appointed Attorney for Protected Person-Appellee.
OPINION
GERBER, Judge.
In this appeal, we consider whether the probate court abused its discretion (1) in finding that the appointment of an incapacitated person's guardian was necessary and (2) in appointing an independent third party as guardian rather than one of the ward's adult children. We hold that clear and convincing evidence supported the court's determination that the ward was incapacitated and in need of a guardian. We further hold that under Arizona Revised Statutes Annotated (A.R.S.) section 14-5311 (1995), the court could appoint a person with lower priority than a family member, based upon its determination that the appointment of a family member was not in the ward's best interest.
FACTS[1] AND PROCEDURAL HISTORY
At the time this guardianship and conservatorship proceeding was initiated in February 1994, Francis H. Kelly (Mr. Kelly), the adult protected person, was 79 years old. His wife, Rose Kelly (Mrs. Kelly), had died in June 1993. She had managed the couple's finances and taken care of Mr. Kelly for some time prior to her death. His mental capabilities had been declining for at least four years before Mrs. Kelly died.
Mr. Kelly had five grown children: Joyce Kelly (Joyce), Connie Buessing (Connie), and Patricia Kaltenbaugh (Pat), who lived in Arizona, and Donald Kelly (Donald) and Joan Bowser (Joan), both of whom lived out-of-state. He also had a 30-year-old grandson, Jeffrey Kelly (Jeffrey), whom he had helped raise during the time Jeffrey and his mother, Connie, lived with Mr. and Mrs. Kelly.
As an adult, Jeffrey visited his grandparents at least twice a week. He continued to visit his grandfather at least that often after his grandmother died. Connie saw her parents almost daily after she moved out of their house. After her mother's death, she had lunch with her father at least six days a week. Connie also helped her father with his finances.
During the probate of Mrs. Kelly's will, the family learned that Mr. Kelly's will, which had been executed in 1992, provided that the couple's house be left to Jeffrey. The remainder of Mr. Kelly's estate was to be divided equally among his five children and Jeffrey.
In late October 1993, Donald took Mr. Kelly to an attorney who drafted a new will providing that his estate be divided equally among the five children and that Jeffrey take nothing. Mr. Kelly also executed a power of attorney naming Donald as his attorney-in-fact. Thereafter, Donald placed all of Mr. Kelly's money, which exceeded $400,000, into joint accounts bearing his and his father's names.
Before Mrs. Kelly's death, Joyce, a registered nurse, was estranged from her parents. However, after her mother's death, she began providing dinner for Mr. Kelly every evening.
*517 On October 31, 1993, Connie, Pat, Donald, Joyce, and Jeffrey met to discuss Mr. Kelly's care and his will. The meeting broke up when Mr. Kelly physically threatened Connie and Jeffrey  conduct which had never occurred previously. A few days after the family meeting, Joyce moved in with her father to care for him. Connie and Jeffrey no longer visited Mr. Kelly because he made verbal threats against them. They felt Joyce was hostile toward them and was provoking Mr. Kelly's hostile behavior.
In February 1994, Connie sought a court-ordered evaluation of Mr. Kelly to determine his need for a conservator. She also filed a petition for her appointment as conservator. Connie later amended her petition to request that the court also appoint her as Mr. Kelly's guardian. Donald and Joyce objected to the petition and asked the court to appoint Donald or a private fiduciary as conservator and, if it determined a guardian was necessary, to appoint Joyce as guardian. At the hearing regarding the conservatorship, the parties agreed to have a private fiduciary, Nancy Elliston, appointed as conservator.
Early in the court proceedings, the court ordered a geriatric evaluation of Mr. Kelly. The team that conducted the evaluation reported to the court that Mr. Kelly was suffering from mild to moderate dementia, probably caused by Alzheimer's Disease. This condition caused Mr. Kelly to experience difficulty in paying his bills, shopping for food, providing adequate housing, taking medication, and making appropriate decisions to protect himself personally, physically and financially. The evaluators believed that he needed 24-hour supervision.
The psychologist who evaluated Mr. Kelly concluded that he required supervision of day-to-day activities and that he did not have the ability to make his own safety decisions. She recommended that a guardian be appointed. She noted that Mr. Kelly had acknowledged to her that he needed help and should not live alone. The geriatric evaluation reported that Mr. Kelly was independent in some activities of daily living, such as dressing, bathing, and eating, but that he needed assistance with transportation, medication, grocery shopping, meal preparation, and laundry.
Both the psychologist and court visitor recommended that a third party rather than a family member be appointed as Mr. Kelly's guardian due to continuing disputes among the family members. The psychologist reported that "both sides believe themselves in the right regarding his needs and care, and he is in the center of the tug of war.... The only way I can see to diminish the conflict and aggressiveness of the family is to remove them one step from the decision-making process."
At the hearing on the guardianship petition, a psychiatrist called by Joyce and Donald testified that Mr. Kelly had only a mild type of dementia characterized by difficulties in memory and that he did not need a guardian at that time because his mental decline had not affected his daily living activities. The psychiatrist related that Mr. Kelly had told him that Joyce was doing a good job as his caretaker. The probate court found by clear and convincing evidence that Mr. Kelly was incapacitated under A.R.S. sections 14-5304 and 14-5101 and that the appointment of a guardian was necessary to provide for his welfare. The court also determined that due to the hostility among his family members, it was in Mr. Kelly's best interest to have an independent third-party guardian, despite the statutory priorities in A.R.S. section 14-5311. Accordingly, the court denied the petition for appointment of Joyce as guardian and granted the cross-petition for appointment of Elliston as guardian. Donald and Joyce timely appealed from the order of guardianship. We have jurisdiction pursuant to A.R.S. section 12-2101(J) (1994).
DISCUSSION
A. The Need for a Guardian
On appeal, appellants argue that the trial court erred in finding that Mr. Kelly needed a guardian because there was no evidence that his short-term memory problem rendered him unable to understand or make responsible decisions for himself. They note that at trial the psychiatrist testified that Mr. Kelly did not need a guardian *518 because he was able to effectively communicate and carry out decisions concerning his personal safety and basic necessities.
To obtain reversal of a guardianship order, the appellant must show that the trial court abused its discretion in ruling as it did. In re Wilmot's Guardianship, 74 Ariz. 344, 346, 248 P.2d 995, 996 (1952). In exercising its discretion, the trial court has wide latitude to perform its statutory duty to safeguard the well-being of the ward. Countryman v. Henderson, 17 Ariz. App. 218, 221, 496 P.2d 861, 864 (1972).
The standard for appointment of a guardian is set forth in A.R.S. section 14-5304(A) (1995):
The court may appoint a guardian as requested if it is satisfied by clear and convincing evidence that the person for whom a guardian is sought is incapacitated and that the appointment is necessary to provide for the demonstrated needs of the incapacitated person.
"Incapacitated person" is defined at A.R.S. section 14-5101(1) as
any person who is impaired by reason of mental illness, mental deficiency, mental disorder, physical illness or disability, chronic use of drugs, chronic intoxication or other cause, except minority, to the extent that he lacks sufficient understanding or capacity to make or communicate responsible decisions concerning his person.
The court in Matter of Guardianship of Reyes, 152 Ariz. 235, 236, 731 P.2d 130, 131 (App. 1986), adopted the construction of "lacks sufficient understanding or capacity to make or communicate responsible decisions concerning his person" as set forth by the Utah Supreme Court in In re Boyer, 636 P.2d 1085, 1089 (Utah 1981):
[D]etermination that an adult cannot make `responsible decisions concerning his person' and is therefore incompetent, may be made only if the putative ward's decision-making process is so impaired that he is unable to care for his personal safety or unable to attend to and provide for such necessities as food, shelter, clothing, and medical care, without which physical injury or illness may occur.
The evidence presented to the probate court clearly and convincingly showed that Mr. Kelly was an incapacitated person in need of a guardian under A.R.S. section 14-5304(A) and the standard adopted by the Reyes court. The geriatric evaluation team, which consisted of two physicians, a psychologist and a social worker, determined that Mr. Kelly was limited in all his practical abilities other than bathing, dressing, and grooming. The team concluded that a guardian was necessary because he was highly dependent and unable to make proper arrangements for his affairs or for his own care due to impairments of memory, communication, and reasoning. The court visitor also recommended that a guardian be appointed.
Although appellants' expert disagreed with this assessment, the court was entitled to determine which evaluation it found to be more convincing. See Borja v. Phoenix General Hosp., Inc., 151 Ariz. 302, 306, 727 P.2d 355, 359 (App. 1986) (conflicts in experts' opinions were for the trier of fact to resolve). The reports of the evaluation team and the court visitor contained ample evidence to show that Mr. Kelly was incapacitated and needed a guardian. Therefore, the court did not abuse its discretion in finding that he was incapacitated and needed a guardian.
B. The Appointment of an Independent Guardian
Appellants also argue that the probate court erred in appointing Elliston rather than Joyce as Mr. Kelly's guardian because Joyce had priority under A.R.S. section 14-5311. They contend that under this statute the court could not appoint a nonfamily member as guardian unless it first disqualified Joyce. In their view, nothing in section 14-5311 authorizes the court to pass over the person with the highest priority unless the court specifically finds that the preferred person is disqualified.
In setting forth the priorities for appointment of a guardian, A.R.S. section 14-5311 provides in relevant part:

*519 B. Persons who are not disqualified have priority for appointment as guardian in the following order:
* * * * * *
2. An individual or corporation nominated by the incapacitated person if the person has, in the opinion of the court, sufficient mental capacity to make an intelligent choice.[2]
3. An adult child of the incapacitated person.
* * * * * *
7. A private fiduciary, professional guardian, conservator or the Arizona veterans' service commission.
C. The court may give preference for the appointment of a family member unless this is contrary to the expressed wishes of the incapacitated person or is not in his best interest as determined by the court.
The legislature added subparagraphs B(2) and (7) and paragraph C to section 14-5311 in 1992. See 1992 Ariz. Sess. Laws ch. 168, § 6. These provisions have not yet been examined by an Arizona appellate court.
We do not believe section 14-5311(B) requires the court to specifically disqualify a family member in order to appoint a guardian with a lower priority. Express disqualification of a family member is, of course, one means of denying the appointment in favor of a person with lower priority. However, the legislature added two other means by which the court may pass over a preferred family member. Paragraph C allows the court to give preference to a family member unless such appointment is contrary to the expressed wishes of the incapacitated person or if the court determines that the appointment works against the ward's best interest. In such a situation, the court would not have to disqualify the family member in order to appoint someone with a lower priority. In other words, the family priorities in paragraph B are inapplicable if the ward objects or the court finds a family member appointment is not in the best interest of the ward. This interpretation is consistent with the common law rule that "[t]he cardinal consideration governing the court in its appointment of a guardian for the person and estate of a ward is how to serve most effectively the best interests and temporal, moral and mental welfare of a living person." Countryman, 17 Ariz. App. at 220, 496 P.2d at 863.
Appellants argue that if the legislature had intended to allow the probate court to appoint as guardian a person with lower priority than a family member, it would have included language in A.R.S. section 14-5311 similar to that found in A.R.S. section 14-5410, which provides in paragraph B that "[t]he court, for good cause, may pass over a person having priority and appoint a person having less priority or no priority." We believe that section 14-5311(C) performs in the guardianship context the same function that section 14-5410(B) performs in the conservatorship context. Both provisions allow the court to pass over a person having priority. The provision in section 14-5311(C) is more specific than 14-5410(B) because it gives only two reasons to remove the preference accorded to a family member, whereas 14-5410 requires only a finding of "good cause" to pass over a preferred person. The differing wording does not change the conclusion that section 14-5311(C) allows the court to pass over a preferred family member in favor of the appointment of someone with a lower priority.
In appointing a private fiduciary as Mr. Kelly's guardian, the court in effect disqualified Joyce when it noted that she was part of the family hostilities. More importantly, however, the court found that appointing an independent guardian was necessary to protect Mr. Kelly from the hostilities within his family and that an unrelated guardian would best be able to handle that role, even if Joyce remained the caregiver. The court stated that it was in the best interest of Mr. Kelly to have an independent third-party guardian, despite the statutory priorities in A.R.S. section 14-5311. The court made the proper findings under section 14-5311(C) to extinguish the preference for the appointment *520 of a family member so that it could appoint a person with lower priority as guardian.
Appellants do not contend that the court abused its discretion in finding that, due to family hostilities, the appointment of a family member would not be in the best interest of Mr. Kelly. In fact, the evidence in the record amply supports the court's ruling. The best interest of the ward is served by appointing a non-family member as guardian where the family members are unable to get along with each other or are taking advantage of the ward. See, e.g., Matter of Guardianship and Conservatorship of Schmidt, 401 N.W.2d 37, 39 (Iowa 1987) ("From time to time wards need more protection from kin than from strangers. Thus, the trial court is authorized to exercise its own judgment on who might best serve in the fiduciary capacity.")
CONCLUSION
The probate court did not abuse its discretion in finding that Mr. Kelly needed a guardian or in appointing an independent third party rather than a family member as his guardian. Accordingly, we affirm the probate court's judgment.
NOYES, P.J., and CONTRERAS, J., concur.
NOTES
[1] Appellants' statement of facts in their opening brief does not include any references to the record as required by Rule 13(a)(4), Arizona Rules of Civil Appellate Procedure. Accordingly, we have disregarded their statement of facts. See Flood Control Dist. of Maricopa County v. Conlin, 148 Ariz. 66, 68, 712 P.2d 979, 981 (App. 1985).
[2] Appellants maintain that this priority applies to Joyce because the court visitor reported that Mr. Kelly told him that he wanted Joyce to be appointed his guardian.