NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In the Matter of Guardianship and Conservatorship of:

ALICE D. HICKEY, *an Adult,*

JOHN M. HICKEY, *Petitioner/Appellee.*

*v.*

JAMES D. HICKEY, *Respondent/Appellant.*

No. 1 CA-CV 23-0578

FILED 10-01-2024

Appeal from the Superior Court in Yavapai County
No. S1300GC202380024
The Honorable John David Napper, Judge
The Honorable Linda Wallace, Judge *Pro Tempore*

**AFFIRMED**

APPEARANCES

James Hickey, Douglas
*Respondent/Appellant*

H&M Law, PLLC, Cottonwood
By William J. Macdonald
*Counsel for Petitioner/Appellee*

---

**MEMORANDUM DECISION**

Judge D. Steven Williams delivered the Court's decision, in which Presiding Judge Michael J. Brown and Judge Daniel J. Kiley joined.

---

**W I L L I A M S**, Judge:

¶1        James Hickey appeals the superior court's appointment of his brother, John Hickey, as the guardian and conservator of Alice Hickey, the parties' mother. For the following reasons, we affirm.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

¶2        After 83-year-old Alice experienced a medical event requiring hospitalization, John petitioned for both a temporary and a permanent appointment as her guardian and conservator. *See* A.R.S. § 14-5303(A) (authorizing "any person interested" in an "alleged incapacitated . . . person's affairs or welfare" to "petition for the appointment of a guardian"); A.R.S. § 14-5404(A) (authorizing "any person who is interested" in the "estate or affairs" of a "personal allegedly in need of protection" to "petition for the appointment of a conservator"). In the petition, John alleged that Alice is mentally and physically impaired and that an unnamed "close relative" has financially exploited her.

¶3        The superior court appointed an attorney, a physician, and a court investigator and scheduled a hearing on the petition. With a hearing date set, John provided notice to Alice via personal service, to his sister by certified mail, and to James, who is incarcerated, through first class mail. *See* A.R.S. § 14-5309(A)(1) (requiring that notice of a guardianship hearing "be given to . . . the alleged incapacitated person and that person's spouse, parents and adult children"); A.R.S. § 14-5405(A)(1), (2) (requiring that notice of a conservatorship proceeding "be given to . . . [t]he protected person . . . [and the] adult children of the protected person or person allegedly in need of protection"). Given his inability to attend in-person, James moved to attend the hearing virtually. As part of his motion, James noted that Alice had designated him as her legal agent, attaching copies of Alice's durable and health care powers of attorney.

---

[1]        For clarity, we respectfully refer to all parties by their first names.

¶4          Meanwhile, the court-appointed physician filed a health professional's report with the court, detailing his examination findings that Alice suffers from paranoid schizophrenia and dementia - characterized by hallucinations, delusions, physical aggression, mood disturbance, memory loss, emotional distress, and cognitive impairment. Because these conditions will cause Alice's "baseline functioning" to "progressively decline," the physician opined that she "will never gain back the capacity to care for herself" unassisted. The appointed investigator likewise submitted a report to the court, recounting her interviews with Alice, John, and James. During their conversation, Alice told the investigator that: (1) she does not want John "interfering in her business," (2) "James is the only person she can trust," and (3) she has sent James an undisclosed amount of money during his incarceration. John told the investigator that Alice: (1) sexually abused both him and James as children and (2) maintains "a sick relationship" with James, including emailing "lewd videos" to him in prison despite his eighteen convictions for voyeurism and surreptitious recording. Finally, James told the investigator that: (1) his parents lost their house when they pledged it as collateral "for his bail and he skipped out," (2) "he has had a hard life and is sorry for his criminal activity," and (3) Alice sends him money in prison every month. Based on these interviews and her review of both the health professional's report and Alice's video emails to James, the investigator recommended granting John's petition for appointment as guardian and conservator.

¶5          At the hearing on the petition for temporary guardianship and conservatorship, the superior court granted James's motion to participate remotely, but he did not appear. After receiving John's testimony (the sole witness) and reviewing the submitted reports, the court found Alice incapacitated and appointed John as her temporary guardian and conservator. Counsel for Alice objected, and the court set an evidentiary hearing on John's petition for permanent guardianship and conservatorship.

¶6          A few weeks later, James filed an "omnibus motion" challenging John's appointment as Alice's guardian and conservator. Among other things, James alleged that John has emotionally abused and neglected Alice.

¶7          At the evidentiary hearing on the petition for permanent guardianship and conservatorship, James did not appear, and the superior court summarily denied his omnibus motion. After Alice, John, and the appointed investigator testified, the court continued the remainder of the hearing.

3

**¶8**        Less than two weeks later, James filed an "injunction," arguing the superior court lacked jurisdiction over the matter and requesting an order vacating John's appointment as temporary guardian and conservator. Thereafter, James filed a motion to dismiss, asserting, among other things, that the guardianship proceedings "violated due process" because he has priority of appointment as Alice's designated agent under her durable and health care powers of attorney.

**¶9**        At the continued evidentiary hearing on the petition for permanent guardianship and conservatorship, the superior court summarily denied James's pending motions. Alice and the physician testified, and several exhibits were submitted for the court's consideration. The court then entered an order appointing John as Alice's permanent guardian and conservator.

**¶10**        James moved for a new trial, alleging that: (1) the court denied him the opportunity to appear at the evidentiary hearing, (2) John has emotionally abused Alice, (3) John has threatened and intimidated other family members, and (4) John has committed sex crimes. The court denied James's motion for new trial.

**¶11**        James timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) and -2101(A)(9).

## DISCUSSION

**¶12**        James challenges the superior court's appointment of John as Alice's permanent guardian and conservator. He argues that: (1) the court lacked jurisdiction "to hear the case," (2) John's petition failed to comply with the governing statutory requirements, (3) the evidence failed to substantiate John's allegations of incapacity, and (4) the court misapplied the law governing priority of appointment.

**¶13**        Although James's brief does not comply with the civil appellate rules, failing to adequately cite to the record and legal authority upon which he relies, *see* ARCAP 13(a)(7)(A), we exercise our discretion to address his claims on the merits to the extent they are supported by reasonable explanation. *See Delmastro & Eells v. Taco Bell Corp.*, 228 Ariz. 134, 137, ¶ 7 n.2 (App. 2011) (noting appellate court's discretionary authority to consider the merits of deficient briefs). We also note that the appellate record does not contain any transcripts of the evidentiary hearings. Our procedural rules task appellants with ordering "transcripts of superior court proceedings not already in the official record that the appellant deems

4

necessary for proper consideration of the issues on appeal," and if an "appellant will contend on appeal that a judgment, finding or conclusion, is unsupported by the evidence or is contrary to the evidence, the appellant must include in the record transcripts of all proceedings containing evidence relevant to that judgment, finding or conclusion." ARCAP 11(c)(1)(A), (B). Here, James failed to comply with his obligations under ARCAP 11. "When an appellant fails to include all transcripts or other documents, we assume the missing portions of the record support the [superior] court's findings and ruling[s]." *State ex rel. Brnovich v. Miller*, 245 Ariz. 323, 324, ¶ 5 n.1 (App. 2018). Therefore, to the extent James's challenges implicate hearing transcripts, we presume that the record supports the court's rulings.

## I.        Jurisdiction

**¶14**        Without explanation or citation to legal authority, James argues that the superior court acted "in excess" of its jurisdiction. Jurisdiction refers to a court's power and authority "to hear and determine a controversy." *Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, 594, ¶ 13 (App. 2009) (quotation and citation omitted). We review *de novo* whether a court has the authority to hear a case relating to a specific subject matter. *Buehler v. Retzer ex rel. Indus. Comm'n*, 227 Ariz. 520, 521, ¶ 4 (App. 2011). We also review *de novo* whether a court has the authority to exercise its power over a particular person. *Ruffino v. Lokosky*, 245 Ariz. 165, 168, ¶ 9 (App. 2018).

**¶15**        "To the full extent permitted by the constitution," the superior court has subject matter jurisdiction to adjudicate all issues relating to the protection of "incapacitated persons." A.R.S. § 14-1302(A)(2). As part of that jurisdiction, the court has the authority to appoint a guardian and a conservator. A.R.S. § 14-5102(A) ("The court has jurisdiction over protective proceedings and guardianship proceedings."); A.R.S. § 14-5402 ("After the service of notice in a proceeding seeking the appointment of a conservator or other protective order and until the termination of the proceeding, the court in which the petition is filed has . . . [e]xclusive jurisdiction to determine the need for a conservator[.]"). Likewise, under the Uniform Adult Guardianship and Protective Proceedings Jurisdiction Act, the superior court "has jurisdiction to appoint a guardian" if Arizona "is the respondent's home state." A.R.S. § 14-12203; *see also* A.R.S. § 14-12201(A)(2) (defining "home state" as "the state in which the respondent was physically present, including any period of temporary absence, for at least six consecutive months immediately before the filing of the petition"). No party contests that Alice owns a home in Arizona and

resided in the state for at least six consecutive months before the medical event that precipitated John's petition for guardianship and conservatorship. Therefore, the superior court had the authority both to hear and determine a guardianship/conservatorship controversy and to exercise its power over Alice.

## II.     Procedural Bar

¶16          John contends that James's "continued participation in this matter, including this appeal," is procedurally barred because he neither timely objected before nor appeared at the initial hearing on the petition for guardianship and conservatorship. As support for this contention, John cites Arizona Rule of Probate Procedure ("Probate Rule") 15(e)(2), which states that an "interested person" who "does not timely file a written response before the initial hearing on the petition . . . *must* attend the hearing [and] orally respond to the petition at the hearing." (Emphasis added.) *See* A.R.S. § 14-1304 ("Unless specifically provided to the contrary in [Title 14] or unless inconsistent with its provisions, the rules of probate procedure govern formal proceedings under [Title 14].").

¶17          In response, James argues that he should not be penalized for his absence from the initial hearing, asserting the superior court "failed to call [his prison] facility" and he had no other means of participating. Indeed, according to James, the court "literally ignored" his attempt to appear at the hearing.

¶18          As recorded in the initial hearing's minute entry, the superior court granted James's motion for virtual attendance and then simply noted that he "[wa]s not present." But we need not decide whether James's request to appear remotely at the initial hearing satisfied Probate Rule 15(e)(2), or whether his motion, noting his designation as Alice's legal agent and attaching her durable and health care powers of attorney, qualified as a "written response" under Probate Rule 15(e)(1) ("An interested person who opposes the relief requested in a petition should file a response that objects to the petition . . . no later than 7 calendar days before the initial hearing on the petition."). The superior court was in the best position to evaluate the adequacy of James's efforts to participate in the hearing, including the sufficiency of its own efforts to facilitate his appearance, and it did not find his continued participation in the proceedings procedurally barred. In the absence of hearing transcripts, we presume the record supports the court's implicit ruling and likewise find no procedural bar.

### III. Compliance with Statutory Requirements

**¶19** James argues that John's petition for guardianship and conservatorship was "fatally defective." Specifically, James contends that John's pleading failed to disclose, as required by statute, that Alice had executed durable and health care powers of attorney designating him as her agent.

**¶20** Under A.R.S. § 14-5303(A), any person interested in an alleged incapacitated person's "affairs or welfare may petition for the appointment of a guardian."

> B. The petition shall contain a statement that the authority granted to the guardian may include the authority to withhold or withdraw life sustaining treatment . . . and *shall state*, at a minimum and *to the extent known*, all of the following:
>
> . . . .
>
> 11. Whether the alleged incapacitated person is the principal under a health care power of attorney, and, if so, a copy of that health care power of attorney must be attached to the petition.
>
> 12. Whether the alleged incapacitated person is the principal under a durable power of attorney in which the alleged incapacitated person has nominated someone to serve as guardian, and, if so, a copy of that durable power of attorney must be attached to the petition.

A.R.S. § 14-5303(B) (emphasis added).

**¶21** Nothing in the record suggests that John knew Alice had executed durable and health care powers of attorney when he filed the petition. More importantly, the amendment to A.R.S. § 14-5303(B), which added subsections (11) and (12) requiring disclosures of durable and health care powers of attorney, did not take effect until October 30, 2023. *See* 2023 Ariz. Sess. Laws, ch. 195, § 6. Accordingly, when John filed the petition for a temporary and permanent appointment as guardian and conservator in

April 2023, no statutory provision required such disclosures. Therefore, James has not demonstrated that the petition was statutorily deficient.[2]

## IV.    Evidence of Incapacity and Need for a Guardian/Conservator

**¶22**        James contests the evidentiary basis for the appointment of a guardian and conservator for Alice. He characterizes John's allegations of incapacity as either "unfounded or of de minimis significance."

**¶23**        As authorized under the governing statutes, the superior court may appoint a guardian and conservator if it finds by clear and convincing evidence that mental illness, physical impairment, or chronic drug use renders the prospective ward unable to manage her affairs and "make or communicate responsible decisions" concerning her welfare. A.R.S. §§ 14-5101(3); -5304(B); -5401(A)(2); *see also Matter of Guardianship of Reyes*, 152 Ariz. 235, 236 (App. 1986). "To obtain [the] reversal" of an appointment, "the appellant must show that the [superior] court abused its discretion in ruling as it did." *In re Guardianship of Kelly*, 184 Ariz. 514, 516, 518 (App. 1996); *see also Countryman v. Henderson*, 17 Ariz. App. 218, 221 (1972) (explaining the superior court has "wide latitude" in "exercising [its] discretion" to achieve the result "most conducive to the permanent well-being of the ward").

**¶24**        Contrary to James's contention, the evidence clearly and convincingly shows that Alice is an incapacitated person in need of a guardian and conservator under the statutory standards. Although the examining physician found little evidence to support John's allegation that Alice is substantially impaired physically, simply noting in his report that she has an "unsteady gait" and some mobility challenges due to a back injury, he diagnosed her with substantial mental impairment caused by paranoid schizophrenia and dementia. Given the progression of her psychotic episodes, generalized disorientation, and inability to make decisions, the examining physician opined that Alice will never be able to care for herself without assistance. Likewise, as detailed in the court investigator's report, Alice's interview statements reflect considerable psychosis, including her claims that since she entered a behavioral facility following her hospitalization, she "gets beat up daily," "has been strangled three times," sexually assaulted, and forced to "put sixty men in prison," despite no visible "bruising or marks." Based on her in-person assessment,

---

[2]        As noted, James submitted copies of Alice's durable and health care powers of attorney before the initial hearing on the petition for temporary and permanent guardianship/conservatorship.

the investigator opined that Alice needed a guardian and conservator. Moreover, in the absence of transcripts, we presume that the hearing testimony of the physician and the investigator further supports the court's finding of incapacity. *See Kelly*, 184 Ariz. at 518 ("the court was entitled to determine" the evidence "it found to be more convincing"). Because the reports, and presumably the testimony elicited at the evidentiary hearing, provided ample evidence that mental illness renders Alice incapable of managing her affairs and making responsible decisions concerning her care, the court did not abuse its discretion in finding her incapacitated and in need of a guardian and conservator.

## V.        Priority of Appointment

**¶25**         James argues that the superior court erred in appointing John rather than himself as Alice's guardian and conservator because Alice designated him as her agent in her durable and health care powers of attorney. According to James, he had statutory priority of appointment, and the court had no authority to bypass him.

**¶26**         We review a superior court's interpretation and application of statutes *de novo*. *Ariz. Republican Party v. Richer*, 257 Ariz. 210, 215, ¶ 10 (2024). We defer, however, to the court's factual findings unless clearly erroneous, *id.*, and will affirm the court's rulings if "correct for any reason." *Glaze v. Marcus*, 151 Ariz. 538, 540 (App. 1986).

**¶27**         The governing statutory provisions provide, in relevant part:

> B. The court *may consider* the following persons for appointment as guardian in the following order:
>
> . . . .
>
> 3. The person nominated to serve as guardian in the incapacitated person's most recent durable power of attorney or health care power of attorney.
>
> . . . .
>
> 5. An adult child of the incapacitated person.
>
> . . . .
>
> F. For good cause the court may pass over a person who has priority and appoint a person who has a lower priority or no

priority. For the purposes of this subsection, "good cause" includes a determination that:

. . . .

2. Honoring the incapacitated person's durable power of attorney or health care power of attorney would not be in the physical, emotional or financial best interest of the incapacitated person.

A.R.S. § 14-5311 (emphasis added).

A. The court *may* appoint an individual . . . as conservator of the estate of a protected person[.] The following are entitled to *consideration* for appointment [as conservator] in the order listed:

. . . .

3. The person nominated to serve as conservator in the protected person's most recent durable power of attorney.

. . . .

5. An adult child of the protected person.

. . . .

B. . . . The court, for good cause, may pass over a person having priority and appoint a person having a lower priority or no priority. For the purposes of this subsection, "good cause" includes a determination that:

. . . .

2. Honoring the protected person's durable power of attorney would not be in the physical, emotional or financial best interest of the protected person.

A.R.S. § 14-5410 (emphasis added).

¶28        Both A.R.S. §§ 14-5311 and -5410 rank preferred appointees for the superior court's consideration. Each statute also contains a "good cause" provision that expressly authorizes the court to "pass over a person" who has higher priority and appoint a person who has lower priority, or no

priority, if the court finds that honoring the incapacitated (and protected) person's durable power of attorney would be contrary to the incapacitated person's best interests. *See Kelly*, 184 Ariz. at 519 (explaining the legislature authorized the court to "pass over a preferred family member" if "such appointment . . . works against the ward's best interest"). Thus, contrary to James's contention, neither statute requires the court to appoint the highest priority individual as guardian or conservator.

¶29 Here, the undisputed record reflects that James "is currently in the custody of the Arizona Department of Corrections and will remain there for another six years." Considering the associated restrictions on James's ability to monitor and care for Alice, and presuming, in the absence of transcripts, that the evidence adduced at the hearings supports the superior court's implicit finding that appointing James as Alice's guardian and conservator would be contrary to her best interests, we conclude the court did not abuse its discretion by passing over James and instead appointing John as Alice's guardian and conservator.

**CONCLUSION**

¶30 For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:   AGFV

11