NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

MANDY P., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, E.R., M.R., R.R.,
*Appellees.*

No. 1 CA-JV 16-0243
FILED 12-8-2016

Appeal from the Superior Court in Maricopa County
No. JD27257
The Honorable Joseph C. Welty, Judge

**AFFIRMED**

COUNSEL

Czop Law Firm, PLLC, Higley
By Steven Czop
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By JoAnn Falgout
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Chief Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Judge Lawrence F. Winthrop joined.

---

**B R O W N**, Chief Judge:

¶1        Mandy P. ("Mother") appeals the juvenile court's order terminating her parental rights to her three children. For the following reasons, we conclude that reasonable evidence supports the court's order and therefore affirm.

## BACKGROUND

¶2        Mother and Michael R. ("Father")[1] have three children: E.R. (born in 2006), M.R. (born in 2007), and R.R. (born in 2011). The Department of Child Safety ("DCS") took the children into temporary physical custody in October 2013 when Mother and Father were arrested for various drug and theft charges with uncertain release dates. DCS alleged that Mother was unable to safely parent due to incarceration, substance abuse and domestic violence, and that she had neglected the children by failing to provide them with the basic necessities of life.[2] When they were arrested, Mother admitted that she had a protective order against Father, and Father gave officers false information to prevent detection of such order. Mother also stated she smokes marijuana when "out with friends" and the children aren't around, and that she "took a [V]alium because she was so stressed out."

¶3        Mother waived her right to contest the dependency allegations and the juvenile court found the children dependent, adopting a case plan of family reunification as to E.R. and M.R., and family reunification concurrent with severance and adoption as to the youngest child, R.R. Mother signed Form 1, Notice to Parent in Dependency Action,

---

[1]        Father's parental rights have also been terminated but he is not a party to this appeal.

[2]        DCS subsequently withdrew the incarceration ground when Mother was released from custody.

advising her of the need to attend all court hearings and the consequences for failing to attend without good cause.

**¶4**         DCS offered Mother reunification services, including visitation, substance abuse testing and treatment, individual and domestic violence counseling, parent aide services, family reunification team, and psychological evaluation.  Other than one positive drug test in November 2013, as of June 2015, Mother had successfully completed counseling, a parent aide program, and substance abuse testing and treatment.  Mother's visitation with the children, however, was less successful and she fluctuated from supervised to unsupervised then back to supervised visitation.  The children disclosed that on at least two occasions when Mother had unsupervised visitation, Mother allowed them to have contact with Father, they made a video for him, and he was "going to build them a house so they could all be a family again."  Mother told the case aide that "he is their father and I cannot make him leave."

**¶5**         In October 2015, the juvenile court granted DCS's request to change the case plan to severance and adoption for all three children.  DCS then filed a motion to terminate Mother's parental rights based on Arizona Revised Statutes ("A.R.S.") section 8-533(B)(8)(c) (fifteen months out-of-home placement).  DCS alleged that Mother continued to have contact with Father and allowed contact between Father and the children despite Father's lack of participation in any DCS services with respect to his own dependency proceedings, his involvement in criminal activity, and his abuse of Mother.  DCS also alleged termination would be in the children's best interests.

**¶6**         Mother appeared at the initial severance hearing in November 2015 and contested severance.  During the hearing, the juvenile court set the date for the pretrial conference, and informed Mother of her rights set forth in Form 3, Notice to Parent in Termination Action, which included a warning that, in the event Mother failed to appear without good cause, the court could proceed with an adjudication hearing and terminate her parental rights based on the record and evidence presented.  In March 2016, Mother failed to appear at a report and review hearing, during which the court learned that Mother had admitted to her therapist she was taking prescription medication that was not prescribed for her.  Based on this report, the court ordered Mother's counsel to inform Mother that she was required to complete a random rule-out drug test.

**¶7**         In April 2016, based in part on the recommendation of psychologist Christina Lebovitz, DCS moved for and obtained an

emergency hearing, alleging the existing visitation schedule and location would subject the children to potential harm, and asking the court to decrease Mother's visitation to one hour once or twice per month. Lebovitz stated that Mother's visits with the children were "unstructured," with Mother at times falling asleep, failing to promptly respond to the children's needs, and allowing unidentified adults in the home during visits. During one supervised visit with a parent aide in March 2016, the DCS case manager made a surprise visit and reported that E.R. and M.R. were outside the home, unattended, "picking up trash such as cigarette butts, dirty diapers and glass," and R.R. was also outside unsupervised. Lebovitz explained that during the dependency Mother was untruthful about having contact with Father, allowing at least two unauthorized, unsupervised visits between Father and the children, even though Father had not participated in any DCS services to reunify with the children. Lebovitz recommended that Mother have additional domestic violence counseling, but Mother failed to follow through or return the counselor's calls. Mother's previous psychologist, James Thal, observed that "it is troubling that [Mother] would expend effort and energy complying with case plan directives, but then repeatedly jeopardize her chances for reunification by blatantly facilitating unauthorized contact with [Father]." Mother failed to appear at the emergency hearing in April 2016, and the court ordered Mother's visitation reduced.

¶8        Mother also failed to appear at the May 2, 2016 contested severance hearing and her attorney advised she was unaware of Mother's whereabouts. The juvenile court found Mother was present when the severance hearing was scheduled, had been advised of and understood the consequences for failing to appear, failed to appear without good cause, and therefore had waived her legal rights and admitted the allegations in the motion to terminate.

¶9        The juvenile court proceeded in Mother's absence and heard brief testimony from Sabrina Stewart, a DCS caseworker. Stewart testified that Mother provided clean urinalysis testing and her participation in services and engagement in the proceedings was going "very well up until about January 2016," when Mother stopped communicating with DCS. Stewart testified that DCS remained concerned about Mother's "lack of behavior change" with respect to domestic violence and substance abuse, particularly since the "dependency is going on almost three years and . . . we've offered several services and she continues to exhibit the same behavior." Stewart testified that Mother "continued to allow contact between the kids and [Father] despite [Father] not engaging and not maintain[ing] contact with [DCS]." Stewart further testified that there have

been drugs found in Mother's home and Mother admitted to a therapist that she was using prescription medication that was not prescribed to her. Stewart acknowledged that the children's contact with Father occurred about one year before the severance hearing, but explained that while Mother said she unsuccessfully attempted to get a protective order against Father, she was unable to provide DCS with any court documentation. Stewart testified that although Mother maintained the same residence since January 2015, she failed to provide proof of her employment or income. Stewart also testified that termination would be in the children's best interests.

**¶10**         In a subsequent order setting forth the findings of fact and conclusions of law, the juvenile court granted the motion for termination. Mother's timely appeal followed.

## DISCUSSION

**¶11**         To support an order terminating parental rights, the juvenile court must find at least one statutory ground is supported by clear and convincing evidence. *Linda V. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 76, 78, ¶ 6 (App. 2005). Additionally, the court must find by a preponderance of the evidence that the termination is in the best interests of the child. *Mario G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 282, 285, ¶ 11 (App. 2011); A.R.S. § 8-533(B). As the trier of fact, the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of the witnesses, and resolve disputed facts." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004). Accordingly, we will accept the court's findings of fact "unless no reasonable evidence supports those findings." *Jennifer B. v. Ariz. Dep't of Econ. Sec.*, 189 Ariz. 553, 555 (App. 1997).

### A.    Sufficiency of Evidence

**¶12**         A parent in a severance action is required to appear at the pretrial conference, status conference, and termination adjudication hearing. *See* A.R.S. § 8-537(C); Ariz. R.P. Juv. Ct. 66(D). The juvenile court may proceed in the parent's absence and terminate the parent-child relationship based upon the record and evidence presented if the court finds that a parent (1) failed to appear without good cause; (2) had notice of the hearing; (3) was properly served; and (4) had been previously admonished regarding the consequences of failing to appear, including a warning that the hearing could go forward in the absence of the parent and that failure to appear may constitute a waiver of rights and an admission of

the allegations contained in the motion to terminate. Ariz. R.P. Juv. Ct. 66(D)(2).

¶13 Mother does not argue that she did not receive notice of the hearing date and time, was not properly served, that she was not admonished of consequences if she failed to appear, or that she had good cause for failing to appear. Instead, Mother challenges the sufficiency of the evidence supporting the grounds for termination, arguing no reasonable evidence supports the court's termination order because she had stable housing, demonstrated through visitation that she could properly parent, consistently tested negative for drugs, and successfully completed counseling, parent aide, and substance abuse treatment. Mother further asserts that the record is silent as to any domestic violence between Mother and Father during the course of the dependency, or that her admitted contact with Father was inappropriate or harmful to her or the children, and the children's disclosures about their contact with Father were a year before the severance hearing. She also argues that because at the time of the severance hearing Father was incarcerated and facing a significant sentence, "for the foreseeable future, Father would not be a factor to consider in Mother's ability to parent the children."[3]

¶14 As a threshold matter, Mother's arguments fail to recognize that she did not appear for three scheduled court hearings, the most important of which was the termination hearing. Thus, underlying our review of the sufficiency of the evidence is the presumption that by failing to appear, Mother admitted the allegations of the motion for termination. *See* Ariz. R.P. Juv. Ct. 66(D)(2). Nonetheless, DCS was still required to present evidence supporting the grounds for termination. *See Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 212, ¶ 23 (App. 2008) (noting that "parent's failure to appear does not relieve the juvenile court of its obligation to assess the record and evidence presented and to determine whether the state has proven a statutory ground for termination by clear and convincing evidence[.]") (internal quotation omitted).

¶15 DCS sought to terminate Mother's parental rights under A.R.S. § 8-533(B)(8)(c). The juvenile court found that DCS met its burden of proving by clear and convincing evidence that (1) the children had been in an out-of-home placement for a cumulative total period of fifteen months or longer; (2) DCS made a diligent effort to provide appropriate reunification services including domestic violence counseling, family

---

[3] In March 2016, Father was convicted of a class three felony and sentenced to five years' imprisonment.

reunification team, psychological evaluation, substance abuse treatment and testing; and (3) Mother had been unable to remedy the circumstances that caused the children to be in an out-of-home placement and there is a substantial likelihood that she will not be capable of exercising proper and effective parental care and control in the near future.

**¶16**　　　We recognize, as did the juvenile court, that Mother successfully completed many of the reunification services offered by DCS. However, for several months leading up to the termination hearing, Mother stopped communicating with DCS, failed to complete a rule-out drug test, and failed to follow through with a domestic violence counseling referral. She also failed to appear at a report and review hearing, an emergency hearing to reduce her visitation, and the severance hearing. Mother's inaction at this crucial stage of the proceedings supports DCS's position that she was unable to remedy the circumstances that led to removal of the children, and would not be capable of providing them proper care within the near future. Thus, we conclude that the record and the evidence presented at the termination hearing support the court's order terminating Mother's parental rights.

### B.　　Best Interests

**¶17**　　　Mother challenges the juvenile court's decision that termination was in the best interests of the children, asserting the record does not support the court's conclusion that the children were exposed to domestic violence or substance abuse. She also argues that DCS could have explored issues of stability and permanency with a bonding assessment prior to seeking termination of Mother's parental rights.

**¶18**　　　To prove that severance is in the child's best interests, DCS must show that the child would either benefit from severance or be harmed by a continuation of the parental relationship. *Mario G.*, 227 Ariz. at 288, ¶ 26. We will uphold the juvenile court's best interests determination if it is supported by a preponderance of the evidence. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). It is sufficient that DCS show that severance would free the children for adoption, and that the children would benefit from finding an adoptive placement. *See Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 352 (App. 1994); *see also Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 179-80, ¶¶ 19-20 (App. 2014) (explaining that a child's best interests were served by severance when the child was not in an adoptive placement, but steps were being taken to permit her to be placed in an adoptive home). Additionally, DCS can establish that termination is in a child's best interests by presenting evidence showing

that an existing placement is meeting the needs of the child. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 50, ¶ 19 (App. 2004).

**¶19**      Consistent with the juvenile court's findings, Stewart testified at the May 2016 severance hearing that the current placement was meeting the needs of the children, an adoptive home had been identified for all three children, and adoption would provide permanency and stability. Mother's psychologist recommended a best interests and bonding assessment be completed "due to the length of time the children have been in care," which at that time was over two years. DCS, however, is not required to conduct a bonding assessment before a parent's rights are terminated. The record supports the juvenile court's best interests finding.

## CONCLUSION

**¶20**      Based on the juvenile court record and the evidence presented at the termination hearing, we affirm the court's order terminating Mother's parental rights to her three children.



AMY M. WOOD • Clerk of the Court
FILED:   AA