NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

PHILIP P., KATHERINE J., *Appellants*,

*v.*

DEPARTMENT OF CHILD SAFETY, V.P., *Appellees*.

No. 1 CA-JV 16-0350
FILED 3-7-2017

Appeal from the Superior Court in Maricopa County
No. JD528532
The Honorable Karen L. O'Connor, Judge

**AFFIRMED**

COUNSEL

Law Office of H. Clark Jones, LLC, Mesa
By Clark Jones
*Counsel for Appellant Philip P.*

John L. Popilek, PC, Scottsdale
By John L. Popilek
*Counsel for Appellant Katherine J.*

Arizona Attorney General's Office, Mesa
By Ashlee N. Hoffmann
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Presiding Judge Kenton D. Jones delivered the decision of the Court, in which Judge Patricia K. Norris and Judge Paul J. McMurdie joined.

---

J O N E S, Judge:

¶1        Philip P. (Father) and Katherine J. (Mother) appeal the juvenile court's order terminating their parental rights to V.P. (Child).  On appeal, Mother argues the juvenile court erred in ordering her parental rights severed because Department of Child Safety (DCS) did not make a diligent effort to provide reunification services.  She also argues the court erred in concluding DCS had proved severance was in Child's best interests because notes from the therapeutic visitation were not admitted at trial.  Father does not contest the statutory grounds for severance, arguing only that DCS failed to prove Child would benefit from severance of his parental rights, or be harmed by continuing the relationship.  For the following reasons, we affirm.

### FACTS[1] AND PROCEDURAL HISTORY

¶2        In February 2015, DCS received a report that Child, then two years old, had been discovered at a neighbor's apartment unsupervised.  Although Child was awake, both Mother and the neighbor were asleep in the bedroom and difficult to wake and a disheveled man Mother "hardly knew" was asleep on the couch.  A bottle of alcohol was within Child's reach, and she appeared dirty and unkempt.  Child was removed from her parents' care in March 2015 after Father, Mother, and paternal grandmother, the family's safety monitor, all tested positive for methamphetamine.

¶3        In March 2015, DCS filed a petition alleging Child was dependent as to both parents on the grounds of substance abuse and neglect.  Father and Mother waived their rights to a trial on the issue, and

---

[1]        We view the facts in the light most favorable to upholding the juvenile court's order terminating parental rights.  *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010) (citing *Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 207, ¶ 2 (App. 2008)).

the juvenile court adjudicated Child dependent as to both parents and adopted a case plan of family reunification and a concurrent case plan of severance and adoption.

¶4            Mother later admitted to smoking "an 8-ball's worth of methamphetamine" every day for approximately nine years and also used marijuana and alcohol to excess, albeit less frequently, and relapsing in January 2015. She elected to continue substance abuse treatment through Center of Hope, where she had been receiving supportive housing and drug rehabilitation services since September 2012, and was offered random urinalysis testing, drug court, and community resources to address concerns regarding domestic violence. Mother participated in urinalysis testing regularly, but tested positive for alcohol in March and amphetamine in June; despite testing positive for alcohol and amphetamine, when confronted with the test results she denied using any illegal substances at the time. Between June and December 2015, Mother missed eleven of twenty-three required urinalysis tests and tested positive for methamphetamine again in August and September.

¶5            Father also admitted a history of using methamphetamine and marijuana. He was referred to substance abuse treatment, random urinalysis testing, and community resources to address concerns with domestic violence, housing, and employment. He tested positive for methamphetamine in March 2015 but did not participate in any further urinalysis testing until mid-December. Father completed an initial intake evaluation for substance abuse treatment in April 2015. He denied having used any illegal drugs in the previous month, but an oral swab taken at the appointment tested positive for methamphetamine. Father was diagnosed with amphetamine abuse and recommended to complete standard outpatient treatment with individual counseling sessions. The service was closed for non-compliance in May 2015.

¶6            Father was re-referred for substance abuse treatment in June 2015. An oral swab taken at the initial appointment in July 2015 tested positive for methamphetamine. Father thereafter attended eight of twenty-one group counseling sessions but did not fully participate and presented as angry and disruptive. He did not participate in any required drug screens and admitted using methamphetamine again in September 2015.

¶7            Following a psychological evaluation in August 2015, Mother was diagnosed with amphetamine use disorder and unspecified psychotic and trauma-related disorders. The psychologist noted a history of domestic violence and recommended Mother continue with substance abuse

treatment and testing; participate in a relapse prevention program; attend individual counseling to address concerns regarding substance abuse, parenting skills, domestic violence, and anger control; complete a bonding assessment; and participate in a psychiatric evaluation.

¶8 By December 2015, neither parent had completed a substance abuse treatment program or made the behavioral changes necessary to provide Child a safe home. Nor had either parent demonstrated any appreciable period of sobriety, or even provided a urine sample since his or her last confirmed use — July 2015 for Father and September 2015 for Mother. Mother reported another relapse on methamphetamine, discontinued her participation in individual counseling, and was closed out of parent aide services and drug court following multiple periods of incarceration.

¶9 Despite their lack of commitment to substance abuse testing and treatment, both parents engaged in one-on-one parent aide services and visitation, which appeared to go well. However, Child began exhibiting symptoms of emotional distress following visits with Mother and Father, including regression, violence towards others, sleep disturbance, tantrums, inappropriate sexual behaviors, and significant changes in affect. Child was referred to a therapist and ultimately diagnosed with posttraumatic stress disorder resulting from the neglect she experienced in the parents' care. Although Father ultimately completed parent aide services, the aide continued to express concerns regarding his substance abuse.

¶10 In January 2016, over the parents' objections, the juvenile court changed the case plan to severance and adoption. DCS immediately moved to sever Father's and Mother's parental rights on the grounds of substance abuse and the length of time Child had been in out-of-home care. *See* Ariz. Rev. Stat. (A.R.S.) § 8-533(B)(3),[2] (8)(a), (c).[3]

---

[2] Absent material changes from the relevant date, we cite a statute's current version.

[3] Although DCS originally alleged severance was warranted based on nine months in out-of-home care, by the time of trial, DCS had amended its motion to add the allegation of fifteen months in out-of-home care.

¶11 Both parents submitted hair follicle samples in early 2016 which tested positive for methamphetamine. Father admitted using methamphetamine only twice in January 2016, but his sample indicated the presence of methamphetamine at more than twenty-eight times the minimum detection level.[4] Although Father and Mother increased their efforts to engage in substance abuse treatment and counseling, their participation remained inconsistent and Father continued to refuse testing.

¶12 In February 2016, the juvenile court suspended visitation after Child reported Father had touched her inappropriately. After the investigation concluded, DCS referred the parents for therapeutic visitation, but by May 2016 Child's emotional response to visitation had escalated, prompting her therapist to recommend visits be reduced to once per week to allow Child time to process her emotions and stabilize between visits. The therapist also recommended Father and Mother complete individual counseling and parenting classes before visitation was increased.

¶13 Instead, both parents disengaged from services almost entirely. Between January and July 2016, neither parent tested positive for any substances, but Mother missed ten of twenty-four required urinalysis tests, admitted another relapse around April, and did not test at all in June. By the time of trial, Mother was no longer participating in any services and had not completed any substance abuse treatment program. Although she was prescribed medication to treat depression and bipolar disorder through the Center for Hope in May 2016, she did not attend either of two appointments for a psychiatric evaluation scheduled by DCS. Mother had only recently obtained employment and was behind on her rent. During this same period, Father did not complete any required tests, remained non-compliant with substance abuse treatment, and was closed out of the services again. He admitted last using methamphetamine around April 2016 and continued to live with paternal grandmother, a known methamphetamine user.

¶14 A bonding assessment indicated Mother and Child shared a healthy and nurturing bond, and Father's parent aide testified that Father was a caring and attentive parent during visitation. Both the assessor and the parent aide remained concerned about the parents' substance abuse

---

[4] The laboratory analyzing the hair samples applied a "cutoff" level of 500 picograms per milligram of hair. The test results indicated the presence of methamphetamine in Father's hair at 14,234 picograms per milligram.

however.   The assessor specified that Child remained at risk, noting "[M]other's connectivity and level of attentiveness with the child is contingent on her sobriety and this can all change instantly if she sets herself up for relapse."  Thus, the assessor concluded that it would be appropriate to consider unsupervised visitation "in small increments" only if Mother "has demonstrated at least six months to a year of sustained sobriety and abstinence from all drugs and has not produced any questionable urine drug screen results, and if she is not involved with anyone who would be a negative influence on her parenting, her judgment and her sobriety."

¶15	The matter proceeded to trial in August 2016.  Both parents admitted their participation in services was inconsistent.  The DCS case manager testified the primary barrier to reunification — substance abuse — remained largely unaddressed as a result of the parents' refusal to participate consistently in services.  She also expressed concern that neither parent had acknowledged the effects of substance abuse upon his ability to parent and concluded that, in the absence of such insight, Child remained in danger of further neglect if returned to their care.  The case manager also testified Child was adoptable and with an adoptive placement capable of meeting her needs.

¶16	After taking the matter under advisement, the juvenile court found DCS proved all three statutory grounds for severance by clear and convincing evidence as to each parent.  The court also found severance was in Child's best interests and entered an order terminating Mother's and Father's parental rights.  Both parents timely appealed, and we have jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1), -2101(A)(1) and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

### I.	DCS Made a Diligent Effort to Provide Appropriate Reunification Services to Mother.

¶17	Parental rights may be terminated if a statutory ground for severance is found to exist by clear and convincing evidence.  *See* A.R.S. §§ 8-533(B), -537(B); *Kent K. v. Bobby M.*, 210 Ariz. 279, 281-82, ¶ 7 (2005).  When severance is based upon the length of time a child is in out-of-home care or the parent's chronic substance abuse, DCS must also prove that it "has made a diligent effort to provide appropriate reunification services." A.R.S. § 8-533(B)(8), (D); *Marina P. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 326, 329, ¶ 18 (App. 2007) (citation omitted); *Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 453, ¶ 12 (App. 2005) (citing *Mary Ellen C. v. Ariz. Dep't of*

*Econ. Sec.*, 193 Ariz. 185, 191-92, ¶¶ 31-34 (App. 1999)). Thus, DCS must demonstrate it provided the parent with "the time and opportunity to participate in programs designed to help her become an effective parent." *Maricopa Cty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994). However, DCS "is not required to provide every conceivable service," nor "ensure that a parent participates in each service." *Id.* (citing *Maricopa Cty. Juv. Action No. JS-5209 and No. JS-4963*, 143 Ariz. 178, 189 (App. 1984)).

¶18 Mother argues DCS did not provide meaningful or timely reunification services.[5] Specifically, Mother argues DCS's reunification efforts were deficient because: (1) Mother was referred for a psychiatric evaluation in January 2016, but the evaluation was not scheduled until July 2016; and (2) in February 2016, after parent aide services were discontinued as a result of Mother's incarceration, Mother was referred for therapeutic visitation, which did not begin until May 2016. We will affirm the juvenile court's finding of diligent efforts unless there is no reasonable evidence to support it. *See Roberto F. v. Ariz. Dep't of Econ. Sec.*, 232 Ariz. 45, 54, ¶ 41 (App. 2013) (citing *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002)).

¶19 The record reflects Mother was provided multiple referrals for substance abuse assessment, treatment, and testing, as well as parent aide services and drug court — all of which were closed as a result of Mother's inconsistent participation. The only services Mother completed were a psychological evaluation and a bonding assessment. She did not participate in the recommended individual counseling, and tested positive for, or admitted using, methamphetamine seven times in the seventeen months Child was in out-of-home care, most recently only four months

---

5      DCS argues Mother waived this argument on appeal by failing to timely object in the juvenile court. *See Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 179, ¶¶ 17-18 (App. 2014) ("If Mother believed [DCS] was not making diligent efforts to provide appropriate reunification services at any point, it was incumbent on her to promptly bring those concerns to the attention of the juvenile court, . . . [and] in the absence of an objection challenging the type or manner of services, Mother has waived the right to argue for the first time on appeal that [DCS] failed to offer appropriate reunification services."). Nonetheless, in our discretion, we choose to address the substance of Mother's argument. *See Adams v. Valley Nat'l Bank of Ariz.*, 139 Ariz. 340, 342 (App. 1984) (recognizing preference to decide cases on the merits rather than to dismiss summarily on procedural grounds) (citing *Clemens v. Clark*, 101 Ariz. 413, 414 (1966)).

prior to trial. Despite receiving near-constant support for her substance abuse through the Center for Hope for more than three years and facing termination of her parental rights to Child, Mother did not establish any appreciable period of sobriety during the entire course of the dependency.

¶20 Although Mother contends psychiatric services "could have been critical in assisting Mother with psychological issues" leading her to use methamphetamine, Mother made no effort to attend the evaluations once scheduled. Moreover, Mother did see a psychiatrist in May 2016. She was prescribed medication for depression and bipolar disorder at that time but remained inconsistent with urinalysis testing and completely disengaged from other services.

¶21 Additionally, the record reflects therapeutic visitation was appropriately implemented at the recommendation of Child's therapist. There was a delay in obtaining this service, but DCS provided supervised visitation in the interim to permit continued contact between Mother and Child. Regardless, Mother's bond with Child has never been at issue in this case, and Mother cannot show how she was harmed by these circumstances.

¶22 Considering the totality of the circumstances and viewing the facts in the light most favorable to sustaining the juvenile court's order, it is apparent additional or duplicative psychiatric services and/or visitation would have been futile. The record supports the finding of diligent efforts, and we find no error.

## II. DCS Proved Severance Was in Child's Best Interests.

¶23 A finding of one of the statutory grounds for severance under A.R.S. § 8-533, standing alone, does not justify the termination of parental rights; it must also be proved by a preponderance of the evidence that termination of the parent-child relationship is in the child's best interests. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004) (citing *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000)). Both parents argue DCS failed to prove that severance was in Child's best interests by a preponderance of the evidence.

¶24 To establish best interests, it must be shown the child "would derive an affirmative benefit from termination or incur a detriment by continuing in the relationship." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 6 (App. 2004) (citing *Jennifer B. v. Ariz. Dep't of Econ. Sec.*, 189 Ariz. 553, 557 (App. 1997), and *Maricopa Cty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990)). The benefit to the child, particularly when severance is

sought based upon the child's length of time in an out-of-home placement, is the opportunity for permanency where "parents maintain parental rights but refuse to assume parental responsibilities." *Id.* at 337, ¶ 16 (quoting *Maricopa Cty. Juv. Action No. JS-6520*, 157 Ariz. 238, 243 (App. 1988), and citing *James S. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 351, 356 (App. 1998)). In evaluating the child's opportunity for permanency, the juvenile court considers whether there is a current plan for the child's adoption and whether the current placement is meeting the child's needs. *See Bennigno R. v. Ariz. Dep't of Econ. Sec.*, 233 Ariz. 345, 350 (App. 2013) (citing *Mary Lou C.*, 207 Ariz. at 50, ¶ 19, and *Maricopa Cty. Juv. Action No. JS-8490*, 179 Ariz. 102, 107 (1994)).

**¶25**        Mother argues the juvenile court was unable to determine whether severance of her parental rights was in Child's best interests because notes from the therapeutic visitation were not admitted into evidence. Mother asserts this evidence would reveal a close bond between Mother and Child "and Mother's progress towards quality parenting." However, the nature of Mother's bond with Child was never disputed, and, in fact, was specifically acknowledged and considered by the juvenile court in making the best interests determination. Nonetheless, the court determined the Child's "right to a safe, permanent and drug-free home where all of her needs are met" was of primary importance. And, because Mother was unable to provide Child such a home, severance was in Child's best interests. We find no abuse of discretion.

**¶26**        Father argues DCS failed to prove Child would benefit from severance of his parental rights, or be harmed by continuing the relationship, because Child "already suffered a significant detriment from being separated from her family" and presented to visits with bug bites all over her legs. Although Father testified as to his belief that Child's behavioral issues were caused by the stress of "being separated from her loving parents," Child's therapist reported she did not observe any evidence of separation anxiety, confirming instead that Child's behaviors resulted from "poor parenting and boundaries." As the trier of fact, the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Oscar O.*, 209 Ariz. at 334, ¶ 4 (citing *Jesus M.*, 203 Ariz. at 205, ¶ 4). We will not disturb the court's conclusion where, as here, it is supported by reasonable evidence.

**¶27**        The record reflects Child is adoptable and in an adoptive placement that was currently meeting her needs. Although a best interests finding does not require proof that the child would also suffer a detriment

if severance is not granted, *see id.* at ¶ 6 (explaining termination is in a child's best interests if the child "would derive an affirmative benefit from termination *or* incur a detriment by continuing in the relationship") (emphasis added) (citations omitted), the record also supports a finding that maintaining the parental bond would be detrimental to Child. The parents do not contest the court's findings that they are unable or unwilling to parent Child as a result of chronic substance abuse and failed to address the circumstances causing Child to be placed in out-of-home care. *See* A.R.S. § 8-533(B)(3), (8)(a), (c); *Pima Cty. Juv. Action No. S-2460*, 162 Ariz. 156, 158 (App. 1989) ("[W]here there is clear and convincing evidence of parental unfitness which has not been remedied notwithstanding the provision of services by [DCS] and which detrimentally affects the child's well-being, severance may be warranted and appropriate . . .."). Child therefore remains at risk for neglect if returned to either parent's care. On this record, we find no abuse of discretion.

**CONCLUSION**

¶28 The juvenile court's order terminating Father's and Mother's parental rights to Child is affirmed.

