944 P.2d 68

**JENNIFER B., Appellant,**

v.

**ARIZONA DEPARTMENT OF ECONOMIC SECURITY, Angela S., and Jonathan S., Appellees.**

No. 1 CA–JV 96–0222.

Court of Appeals of Arizona, Division 1, Department D.

June 24, 1997.

Review Denied Sept. 25, 1997.

Helm & Kyle, Ltd. by Margaret R. Tinsley, Tempe, for Appellant.

Grant Woods, Attorney General by Kimberly D. Halbig–Sparks, Assistant Attorney General, Phoenix, Hagen, Boyle & Jones, P.C. by Joseph M. Boyle, Phoenix, for Appellee ADES.

Kessler & Doyle by Eric W. Kessler and Michael J. Doyle, Mesa, for Appellee Angela S.

Hamilton Law Office, P.C. by Lynn T. Hamilton, Mesa, Guardian Ad Litem for Jonathan S.

Law Offices of Lawrence M. Bierman, P.C. by Lawrence M. Bierman, Mesa, for Appellee Jonathan S.

## OPINION

VOSS, Judge.

Appellant Jennifer B., the maternal aunt of the dependent child Jonathan S., appeals from the juvenile court's order revoking her permanent guardianship of the child. This appeal involves issues of first impression concerning the relatively new statutory scheme for permanent guardianship of a dependent child pursuant to Ariz.Rev.Stat. (A.R.S.) sections 8–525 to –525.02.

### PROCEDURAL BACKGROUND

On April 26, 1994, by stipulation of all parties, the child was found dependent pursuant to A.R.S. § 8–201(11), was made a ward of the court, was committed to the care, custody, and control of the Arizona Department of Economic Security (ADES), and was placed in the physical custody of his maternal aunt, Jennifer B. (aunt). The child had been living with his aunt since July 1993, with the consent of his mother.

On February 8, 1995, the aunt petitioned for permanent guardianship of the child pursuant to A.R.S. § 8–525.01. Upon the stipulation of the parties without an evidentiary hearing, the court entered an order of permanent guardianship, finding that the mother's current living situation made it doubtful that she would regain custody of the child in the near future and that the aunt was willing to both accept the responsibilities of permanent guardian and allow the mother reasonable visitation with the child. The order provided for a report and review in one year, and, in the interim, provided that "Child Protective Services shall continue to monitor [the child and the mother] and shall provide such services as [the mother] may reasonably request or as [the child] may require."

On February 6, 1996, ADES and the mother filed a petition to revoke the guardianship,

alleging as a significant change in circumstances that the guardian was unable to properly care for the child. The child had been removed from the custody of his aunt on January 2, 1996, after the caseworker learned of allegations that the child was being physically and emotionally abused in the aunt's home. The child was placed in a temporary shelter and then subsequently in a foster home pending the hearing on the petition, and the court ordered counseling for the child, with no contact allowed by his aunt.

After a three-day hearing, the court entered its order revoking the guardianship, concluding that "there has been a change of circumstances proven by clear and convincing evidence and the revocation is in the child's best interest." The court also concluded that "there is clear and convincing evidence that the permanent guardian is not capable of caring for the minor child and is not the appropriate caretaker under the circumstances." The court found the child remained dependent, within the custody of ADES in foster care.

The aunt timely appealed from the order revoking her permanent guardianship.

### · DISCUSSION

On appeal, the aunt raises the following issues:

1. Did the juvenile court err in finding clear and convincing evidence that the permanent guardianship should be terminated pursuant to A.R.S. § 8–525.02?

2. Did the juvenile court err in concluding the child should not be returned to the aunt's home?

3. Did the juvenile court err in failing to find that ADES had a responsibility to provide services to maintain the child's placement in the permanent guardianship prior to removal?

### *Standard of Review*

■ We will affirm a juvenile court's order based on findings of clear and convincing evidence unless no reasonable evidence supports those findings. *See In Matter of Pima County Juv. Sev. Action No. S–113432*, 178 Ariz. 288, 292, 872 P.2d 1240, 1244 (App.1993)(standard of review on appeal from severance order based on clear and convincing evidence). We will not reverse the juvenile court's order unless it is clearly erroneous. *In Matter of Pima County Sev. Action No. S–2397*, 161 Ariz. 574, 577, 780 P.2d 407, 410 (App.1989)(same).

### *Sufficiency of Evidence for Revocation of Guardianship*

The aunt contends on appeal that the juvenile court erred in finding clear and convincing evidence to support revocation of the permanent guardianship. In this case, revocation was based on the following statutory provisions:

A. The child, a parent of the child or any party to the dependency proceeding may file a petition for the revocation of an order granting permanent guardianship if there is a significant change in circumstances, including:

. . . .

2. The child's permanent guardian is unable to properly care for the child.

. . . .

C. The court may revoke the order granting permanent guardianship if the party petitioning for revocation proves a change of circumstances by clear and convincing evidence and the revocation is in the child's best interest.

A.R.S. § 8–525.02.

Prior to 1994, juvenile guardianship proceedings were governed by provisions of the probate code. *See* A.R.S. §§ 14–5201 to –5212. Under the general provisions of the probate code, a trial court had broad discretion to appoint or remove a guardian based solely on a consideration of the best interests of the ward. *See, e.g., In re Guardianship of Kelly*, 184 Ariz. 514, 518, 910 P.2d 665, 669 (App.1996)(appointment); A.R.S. § 14–5212(A)(removal).

■ In 1994, the legislature enacted the provisions at issue in this case, which now enable the juvenile court to appoint a permanent guardian for a child who has been declared dependent. *See* Ariz. Sess. Laws 1994, Ch. 335, § 3. The legislative history of

this enactment indicates that its purpose was to provide "permanency in the custodial relationship" of "older children who are not suitable candidates for adoption," "in a dependency proceeding in those instances where the Department of Economic Security (DES) has been unsuccessful in reuniting the family," and where parental rights are not severed, but, rather, "it is hoped there will be a continuing relation between the parent and the child." Ariz. House of Rep., H.B.2062, Minutes of the Judiciary Committee, Feb. 3, 1994, at 2.

The language of the new juvenile guardianship statute was derived from a nearly identical New Mexico statutory scheme. *See* Ariz. Senate, H.B.2062, Minutes of the Committee on Judiciary, March 8, 1994, at 4; *see* N.M.S.A. § 32A–4–31 to –32. Both the New Mexico and Arizona statutory schemes for permanent guardianship of a dependent or neglected child were adopted to prevent the conflicts that often arose between probate and juvenile laws regarding guardianship of these children. *See Arizona Dept. of Econ. Sec. v. Superior Court,* 186 Ariz. 405, 407, 923 P.2d 871, 873 (App.1996); *In re Guardianship Petition of Lupe C.,* 112 N.M. 116, 812 P.2d 365, 370–71 (App.1991). These more stringent guardianship statutes thus required, for removal of a guardian, proof by clear and convincing evidence of a statutory ground, such as the guardian's inability to properly care for the child, and a finding that the child's best interests would be served by revocation of the guardianship. A.R.S. § 8–525.02; N.M.S.A. § 32A–4–32. The trial court's discretion therefore is less broad under the juvenile permanent guardianship statutes than it is under the probate code provisions regarding other guardianships.

The aunt argues that these more stringent statutory requirements for revocation of the permanent guardianship make it more akin to a termination of parental rights than to a change of custody in a dependency proceeding. For example, she notes that revocation of the guardianship requires proof by clear and convincing evidence, the same burden as for a severance of parental rights. *See generally* A.R.S. § 8–533(B)(statutory grounds for termination of parental rights); *In Matter of Maricopa County, Juv. Action No. JA 33794,* 171 Ariz. 90, 828 P.2d 1231 (App. 1991)(grounds for severance must be proven by clear and convincing evidence). However, this argument overlooks the fundamental constitutional rights afforded parents to the care, custody, and control of their children. *See In Matter of Pima County Juv. Sev. Action No. S–120171,* 183 Ariz. 546, 905 P.2d 555 (App.1995). It also overlooks the "hybrid" nature of the statutory permanent guardianship. While the permanent guardian is provided with most of "the powers and responsibilities of a parent who has not been deprived of custody," A.R.S. § 14–5209, the child remains a ward of the court pursuant to the dependency, and the court has continuing jurisdiction to review and enforce the guardianship order, A.R.S. § 8–525.01(I). Indeed the juvenile court even commented on the unique nature of this statutory relationship:

> I don't know if I view a permanent guardianship in the same posture as a parent. The permanent guardian in this case was still under the court's supervision. . . . It may be neither fish nor fowl. . . .

In this case, the statutory ground alleged as the basis for revocation of the guardianship was that substantially changed circumstances existed in that the aunt was "unable to properly care for the child." *See* A.R.S. § 8–525.02(A)(2). This ground is very similar to one of the statutory definitions of a "dependent" child:

> "Dependent child" means a child who is adjudicated to be:
> (a) In need of proper and effective parental care and control and has no parent or guardian, or one who has no parent or guardian willing to exercise or capable of exercising such care and control.

A.R.S. § 8–201(11). Arizona courts have found this ground is met in situations where children are afraid of their parents, where return to the home might subject them to violence, or where evidence of abuse existed. *See, e.g., In Matter of Santa Cruz County Juv. Dep. Action Nos. JD–89–006 and JD–89–007,* 167 Ariz. 98, 804 P.2d 827 (App.1990); *In Matter of Pima County Juv. Dep. Action No. 118537,* 185 Ariz. 77, 912 P.2d 1306 (App. 1994).

■ The juvenile court found clear and convincing evidence of the guardian's inability to properly care for the child. Two psychologists testified that the child reported corporal punishment and expressed fear of the aunt and her husband. The ADES caseworker reported her observations of welts and scratches on the child's body, admittedly inflicted by the aunt. The child reported to the caseworker several incidents of abuse in the aunt's home. The child had continually stated for more than six months that he was afraid to return to the aunt's home, and preferred to stay in his foster care placement. The mother reported continual incidents of name calling and berating of the child while he was in the aunt's home. The child had been suspended for taking knives to school while in the aunt's care, had reportedly stolen money, and had acted out sexually when first placed into foster care. Based on this record and our standard of review, we cannot conclude that the juvenile court erred in finding clear and convincing evidence that the aunt was no longer able to properly care for the child.

■ Regarding the child's best interests in revocation of the guardianship, one psychological expert testified that the aunt was incapable of showing affection for the child, would continue to use corporal punishment, and still caused the child fear. He opined that, because the child was showing less aggression in his foster placement, it would be "better for him to stay there in foster care" than to return to the aunt. He predicted that a return to the aunt's custody would be detrimental to the child because he would develop a "very negative" view of "people in authority," which would create "a real management problem throughout his life ... into adulthood." He could think of no benefit to the child from a return to the aunt.

The second psychologist also opined that a return to the aunt's custody was "not advisable" because of the child's fear of being hit again. The caseworker opined that "the therapeutic needs of the child and the protection needs of the child appear to supersede the need to be with a family member or return to a guardian," and the current plan was to retain the child in foster care until his mother pursued the recommended counseling and parenting classes. The aunt presented no testimony, expert or otherwise, to establish that continuation of the guardianship would benefit the child.

■ A finding that the best interests of the child will be served by removal from a custodial relationship may be established by either showing an affirmative benefit to the child by removal or a detriment to the child by continuing in the relationship. *In Matter of Maricopa County Juv. Action No. JS–500274,* 167 Ariz. 1, 6–7, 804 P.2d 730, 735–36 (1990)(best interests of the child in severance proceedings). Given the above evidence, we find the juvenile court's conclusion that the best interests of the child would be served by revocation of the guardianship is supported by the record.

### Child's Removal from Aunt's Home

The aunt also argues on appeal that the juvenile court erred in concluding that the child could not be returned to her custody. This argument merely restates the aunt's contention, addressed above, that insufficient evidence was introduced to justify revocation of the guardianship. For the same reasons that the court found it not in the child's best interests to continue the guardianship, the court was justified in finding that the child should not be returned to the aunt's custody.

### ADES Responsibility to Maintain Permanent Guardianship

Finally, the aunt argues that the juvenile court should have considered the failure of ADES to provide the aunt with services to preserve the child's guardianship placement when it first became aware of problems in the aunt's home. For this proposition, the aunt cites to A.R.S. § 8–515(H)(now renumbered and codified at A.R.S. § 8–515(K)), which provides:

In reviewing the foster care status of the child, the court shall, insofar as possible, seek to reunite the family. If the court is unable to do this it shall arrange for the permanent placement of the child through adoption or long-term family foster care. If that is not possible, the court shall seek

to provide group foster care or other appropriate care that is in the child's best interest.

A.R.S. § 8-515(K).

First, as ADES correctly points out, this statute applies to children in foster care, not permanent guardianship status. Second, even if it were to apply to the aunt's status in this case as "family," we would find no abuse of discretion on this record.

The guardianship revocation statute does not require a finding that ADES provided adequate services to preserve the placement. *Compare* A.R.S. § 8-525.02 *with* A.R.S. § 8-533(B)(7)(termination of parental rights on grounds of out-of-home placement when "the agency responsible for the care of the child has made a diligent effort to provide appropriate remedial services ..."). The court found, at the time the guardianship was ordered, that the child did not require current services from ADES, but provided for future services if necessary. The aunt did not request any such services, although she was authorized to do so as a guardian pursuant to A.R.S. § 14-5209(3).

Finally, the aunt has not established what services ADES could have provided to effect a different outcome in this case. The aunt testified that she sought private counseling and attended parenting classes through Jewish Family and Children's Services, without the assistance of ADES, and was unable to correct her problems with the child's discipline despite those services. Under these circumstances, we find no abuse of discretion in the juvenile court's refusal to fault ADES for the failure of the permanent guardianship.

### CONCLUSION

For the foregoing reasons, we affirm the juvenile court's order revoking the permanent guardianship.

RYAN, P.J., and GARBARINO, J., concur.