NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

VICTOR B., ELIZABETH B.,
*Appellants*,

*v.*

DEPARTMENT OF CHILD SAFETY, E.M., C.B.,
*Appellees*.

No. 1 CA-JV 17-0005
FILED 9-28-2017

Appeal from the Superior Court in Maricopa County
No. JD510990
The Honorable Arthur T. Anderson, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Firm, PLLC, Scottsdale
By Alison Stavris
*Counsel for Appellant Father*

Denise L. Carroll, Esq, Scottsdale
By Denise Lynn Carroll
*Counsel for Appellant Mother*

Arizona Attorney General's Office, Tucson
By Dawn R. Williams
*Counsel for Appellee DCS*

---

**MEMORANDUM DECISION**

Judge Diane M. Johnsen delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Maria Elena Cruz joined.

---

**J O H N S E N**, Judge:

¶1        Elizabeth B. ("Mother") appeals the superior court's order terminating her parental rights to her two children, and Victor B. ("Father") appeals the order terminating his parental rights to his child.  We affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2        Mother is the biological parent of a girl born in 2012.[1]  Mother and Father together are the biological parents of another girl born in 2014. In April 2013, the Department of Child Services ("DCS") removed the older girl from Mother and placed her with the girl's maternal grandmother; the superior court found the child dependent based on evidence that Mother had a substance-abuse problem, lacked stable housing and had neglected the child.[2]   Mother participated in parent-aide services, completed substance-abuse counseling and rented an apartment with Father.  After the younger girl was born,  DCS returned the older girl to Mother in September 2014.

¶3        Less than a month later, Mother and Father were involved in a violent altercation with Mother's family outside a restaurant in Gilbert. Father stabbed maternal grandmother's boyfriend, and Mother shouted profane threats at maternal grandmother.  Both children witnessed these events, and both parents were arrested.  DCS eventually took both children into custody and filed a dependency action for the younger one five days later.  The superior court found the child dependent as to both parents in

---

[1]      We view the facts and draw all reasonable inferences in the light most favorable to upholding the superior court's order.  *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 13 (App. 2002).

[2]      The superior court also found the child dependent as to her biological father, whose rights later were severed.  He is not a party to this appeal.

April 2015; meanwhile, the dependency for the older child remained in place.

¶4 DCS recommended Father attend a substance-abuse treatment program, but he refused; he also missed some anger-management counseling sessions and would not attend parenting classes or participate in one-on-one supervised visitation meetings. Father unsuccessfully closed-out of substance-abuse treatment for the second time in December 2014. DCS recommended Mother attend parenting-skills groups and domestic-violence counseling. In December 2014, Father and Mother decided to enroll in treatment programs at Potter's House, a counseling center with which DCS had no contract. The parents' case manager advised them DCS would not be able to pay for services at Potter's House and told them that DCS could pay for the same services at a comparable facility. Mother successfully completed her domestic-violence treatment program on July 22, 2015.

¶5 On July 30, 2015, only one week later, police came to Mother and Father's apartment to investigate a claim of domestic violence. Father escalated the situation by raising his voice to the officers. The officers arrested Father, who proceeded to bash his own head on the center divider of the squad car, drawing blood. Father eventually pled guilty to disorderly conduct with domestic violence and attempted aggravated assault and was given a two-year term of probation.

¶6 Meanwhile, Mother stopped attending her parenting-skills classes when her insurance was cancelled, and Potter's House terminated her from the program in September 2015. Potter's House similarly terminated Father from substance-abuse and anger-management treatment. Father and Mother also failed to successfully complete their supervised visitation. Counselors unsuccessfully closed Father out of another substance-abuse counselling referral in May 2016. Mother began counseling for depression and substance abuse, but the provider cancelled services for lack of contact in June 2016. Father did, however, successfully complete domestic-violence treatment in July 2016.

¶7 DCS moved to terminate Mother's and Father's parental rights in December 2015. The superior court held a hearing over five days in November 2016. During the hearing, the court ordered Father to submit a drug test, and he tested positive for methamphetamine.

¶8 The superior court terminated both parents' rights on the ground of 15 months' time-in-care under Arizona Revised Statutes

("A.R.S.") section 8-533(B)(8)(c) (2017) and in addition terminated Father's rights on the ground of prolonged abuse of dangerous drugs, controlled substances or alcohol under A.R.S. § 8-533(B)(3).[3] Mother and Father each timely appealed. We have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution, A.R.S. §§ 8-235(A) (2017), 12-2101(A)(1) (2017) and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

### A. General Principles.

**¶9** The right to custody of one's child is fundamental but not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11-12 (2000). The superior court may terminate a parent-child relationship upon clear and convincing evidence of at least one of the statutory grounds set forth in A.R.S. § 8-533(B). *Michael J.*, 196 Ariz. at 249, ¶ 12. Additionally, the court must find by a preponderance of the evidence that termination is in the child's best interests. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005).

**¶10** We review a termination order for an abuse of discretion. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004). Because the superior court is in the best position to "weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings," we will accept its findings of fact unless no reasonable evidence supports them. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). On appeal, this court will affirm a severance order unless it is clearly erroneous. *Id.*

**¶11** Under § 8-533(B)(8)(c), DCS must show "the child is being cared for in an out-of-home placement," the child "has been in an out-of-home placement for a cumulative total period of fifteen months or longer," DCS "has made a diligent effort to provide appropriate reunification services," "the parent has been unable to remedy the circumstances that cause the child to be in an out-of-home placement and there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future." Under the statute, the "circumstances which cause the child to be in an out-of-home placement" are those that exist at the time of severance. *Marina P. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 326, 330, ¶ 22 (App. 2007).

---

[3] Absent material revision after the relevant date, we cite a statute's current version.

4

## B.      Father's Appeal.

**¶12**      In finding that Father was unable to remedy the circumstances that caused his child's out-of-home placement, the superior court cited the two domestic-violence incidents as "proof of Father's uncontrolled anger." The court also concluded that Father "plays down the severity of his behavior" and continued to use drugs through the dependency. Father argues that the superior court erred in finding he had been unable to remedy the circumstances that caused the out-of-home placement, but the two domestic-violence incidents, separated only by months (the second of which occurred during the dependency), along with Father's drug use and failure to complete numerous rehabilitative services, reasonably support the superior court's finding that Father was unable to remedy the circumstances giving rise to his daughter's out-of-home placement. *Cf. Desiree S. v. Dep't of Child Safety*, 235 Ariz. 532, 534, ¶ 11 (App. 2014) (insufficient evidence supported severance when parent had remedied circumstances by "successfully complet[ing] all of the reasonable services offered to implement family reunification").

**¶13**      Father further argues DCS failed to show it "made diligent efforts to provide [him] with rehabilitative services." Father contends the psychologist who performed his psychosexual examination was biased and he implies such alleged bias negated DCS's efforts to provide services. To meet its duty of "diligent effort," DCS "need not provide every conceivable service, [but] it must provide a parent with the time and opportunity to participate in programs designed to improve the parent's ability to care for the child." *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 37 (App. 1999) (citation and quotation omitted). Father contends the psychologist who examined him was biased against him because she was married to a prison inmate at the time she examined Father. Father does not explain such bias, nor does the record demonstrate bias. In any event, based on evidence showing that DCS provided Father mental health counseling, parent-aide services, domestic-violence counseling and substance-abuse counseling, along with transportation to each of these services, the superior court did not err in finding DCS showed it had made diligent efforts to provide Father with appropriate reunification services.[4]

---

[4]      Father does not argue severance will not be in his child's best interests. Because we are affirming the superior court's severance of Father's parental rights based on 15 months' out-of-home placement, we need not consider whether the court erred in finding the evidence also

## C.    Mother's Appeal.

**¶14**        Mother argues DCS failed to make a "diligent effort to provide appropriate reunification services" because it did not pay for her counseling at Potter's House after Mother's insurance coverage ran out. *See* A.R.S. § 8-533(B)(8). Mother's caseworker, however, testified she had offered Mother and Father the same services they were receiving at Potter's House at a different counseling center with which DCS had a contract. The caseworker further testified she had told Mother and Father before they began services at Potter's House that they would need to pay for those services because DCS had no contract with Potter's House. DCS also offered the parents transportation to the services at the DCS contractor. This evidence reasonably supports the superior court's finding that DCS "made a diligent effort to provide appropriate reunification services." *See* A.R.S. § 8-533(B)(8).

**¶15**        Mother further argues the superior court erred in finding that she will not be capable of exercising proper parental care in the near future. Mother asserts she could be a better parent if given more time to complete services. Although Mother did complete some services in 2014, her track record grew steadily worse after DCS removed the children in October 2014. The superior court noted that "Mother has not embraced individual counseling to address the difficulties she encountered growing up and how they impact her mental health, decision-making, and involvement with abusive men." After DCS filed for severance, Mother enrolled in individual counseling services, but the provider discharged her several months later because she had not attended a single individual counseling session. On the record presented, reasonable evidence supports the superior court's finding that Mother will be incapable of exercising proper parental care in the near future. *See Maricopa County Juv. Action No. JD-561*, 131 Ariz. 25, 28 (1981) ("Implicit in this right of proper parental care are the rights to good physical care and emotional security.") (citation omitted).

**¶16**        Last, Mother argues severance is not in the best interests of her children because they have bonded with her. "A finding that the best interests of the child will be served by removal from a custodial relationship may be established by either showing an affirmative benefit to the child by removal or a detriment to the child by continuing in the relationship." *Jennifer B. v. Ariz. Dep't of Econ. Sec.*, 189 Ariz. 553, 557 (App. 1997). The superior court found that termination would benefit the children by freeing

---

satisfied the statutory ground of chronic drug or alcohol abuse. *See Michael J.*, 196 Ariz. at 251, ¶ 27.

them from the drugs, domestic violence and instability they experienced in Mother's home. Mother continued to live with Father after he pled guilty to domestic violence, and Father was still in the home when he tested positive for methamphetamine in November 2016, reasonably supporting the superior court's finding.

## CONCLUSION

¶17 For the foregoing reasons, we affirm the superior court's order terminating Mother's parental rights as to both children at issue in this action and terminating Father's parental rights as to the younger child at issue in this action.



AMY M. WOOD • Clerk of the Court
FILED: AA

7