NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

JACKSON G., ELIZABETH S., *Appellants*,

*v.*

DEPARTMENT OF CHILD SAFETY, J.G., *Appellees*.

No. 1 CA-JV 22-0145
FILED 10-20-2022

Appeal from the Superior Court in La Paz County
No. S1500JD202000017
The Honorable Jessica L. Quickle, Judge

**AFFIRMED**

COUNSEL

The Brewer Law Office, P.L.L.C., Show Low
By Benjamin M. Brewer
*Counsel for Appellant Jackson G.*

Carr Law Office, PLLC, Kingman
By Sandra Carr
*Counsel for Appellant Elizabeth S.*

Arizona Attorney General's Office, Tucson
By Autumn L. Spritzer
*Counsel for Appellee*

---

## MEMORANDUM DECISION

Judge Paul J. McMurdie delivered the Court's decision, in which Presiding Judge Brian Y. Furuya and Judge Jennifer B. Campbell joined.

---

**M c M U R D I E**, Judge:

¶1        Jackson G. ("Father") and Elizabeth S. ("Mother") appeal from the juvenile court's judgment terminating parental rights to their son, James.[1] They argue there are insufficient grounds to support the termination. We find no reversible error and affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2        Father and Mother are the biological parents of James, born in 2020. Unfortunately, Father and Mother began abusing illegal drugs in high school, leading to methamphetamine addiction. Their subsequent attempts to "get clean together" failed.

¶3        Father has a history of violence, and Mother reports that his drug abuse "intensifie[s]" this aggression. Father has been charged with multiple instances of domestic violence against Mother, including during her pregnancy with James. A Department of Child Safety ("DCS") report shows Father got angry and hit Mother on the arm during a supervised visit with James. Father was incarcerated for assault at the time of the termination trial.

¶4        Mother has been unable to overcome her drug addiction or consistently attend rehabilitation. She continued using methamphetamine through dependency proceedings involving her other son, despite DCS's offers of services. Her drug use continued throughout her pregnancy with James. By her March 2021 termination trial for James, she had started and dropped out of at least three inpatient drug programs.

¶5        Mother and James tested positive for methamphetamine on the day of James's birth. Right after, Mother and Father fled from the Blythe, California hospital with James, but the police intervened. As a result,

---

[1]        We refer to him by a pseudonym to protect his identity.

California's Child Protective Services removed James from his parents' care and transferred dependency proceedings to Arizona.

**¶6**		In September 2020, Father was arrested for trying to strangle Mother. He was sentenced to prison until June 2022. After his release from custody, the court required him to serve a three-year probation term, including completing more substance-abuse and domestic-violence programs. Even Father recognized that he should participate in a 90-day intensive drug-treatment program in Phoenix after his release.

**¶7**		After Father's sentencing, DCS filed a dependency petition against the parents. The parents entered no contest pleas, and the juvenile court issued an order finding James dependent as to Mother and Father.

**¶8**		One year later, DCS moved to terminate Mother's and Father's parental rights under A.R.S. § 8-533. The grounds for Mother's termination were A.R.S. §§ 8-533(B)(3) (substance abuse) and -533(B)(8)(c) (15 months' out-of-home placement). The grounds for Father's termination were A.R.S. §§ 8-533(B)(4) (felony incarceration) and -533(B)(8)(c) (15 months' out-of-home placement). After a termination trial, the juvenile court issued a final order terminating Mother's and Father's rights in March 2022.

**¶9**		Father and Mother appealed, and we have jurisdiction under A.R.S. § 8-235(A) and Arizona Rule of Procedure for the Juvenile Court 601(A).

## DISCUSSION

**¶10**		To terminate a parent-child relationship, the court must find at least one statutory ground for termination under A.R.S. § 8-533(B) by clear and convincing evidence. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). The court must also find termination is in the child's best interests by a preponderance of the evidence. *Id.* We review the juvenile court's termination decision for an abuse of discretion and will affirm unless no reasonable evidence supports the court's findings. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004).

**A.	There Are Reasonable Grounds to Find that Mother's Substance Abuse Will Continue.**

**¶11**		Mother admits to her history of substance abuse. Still, she argues termination is improper under A.R.S. § 8-533(B)(3) because there are

no "reasonable grounds to believe that the condition will continue for a prolonged indeterminate period." We disagree.

¶12　　　　Throughout the dependency, Mother failed to submit to regular drug testing. Her available test results contain a positive drug test for methamphetamine, and she admitted to relapsing. She enrolled in multiple inpatient treatment programs but could not complete a program. Even if Mother stopped treatment and missed drug tests because of "emotional complications" and transportation issues, as she asserts, the facts are still enough to support the juvenile court's finding that her substance abuse would continue for a prolonged indeterminate period.

¶13　　　　Because sufficient evidence supports the first ground for Mother's parental termination, we need not consider the § 8-533(B)(8)(c) ground. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 (App. 2002) ("If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds.").

**B.　　The Court Did Not Abuse Its Discretion by Terminating Father's Parental Rights Under the 15-Months' Out-of-Home Placement Ground.**

¶14　　　　Courts may terminate parental rights if DCS supervises a child for at least 15 months, DCS made "diligent effort to provide appropriate reunification services," and "there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future." A.R.S. § 8-533(B)(8)(c); *Donald W. v. Dep't of Child Safety*, 247 Ariz. 9, 17, ¶ 25 (App. 2019).

¶15　　　　Father argues the juvenile court abused its discretion by terminating his parental rights on this ground because DCS provided inadequate reunification services and failed to show his inability to provide effective parental care in the near future. Father's arguments are unpersuasive.

¶16　　　　DCS has statutory and constitutional obligations to make a diligent effort to reunify the family. A.R.S. § 8-533(B)(8); *see Jessie D. v. Dep't of Child Safety*, 251 Ariz. 574, 581-82, ¶¶ 20-21 (2021). And Father asserts that DCS violated these obligations by failing to provide him services once incarcerated. He also claims he requested phone calls and visits with James, but DCS "discouraged and denied" him access.

¶17　　　　But DCS's evidence and testimony conflict with Father's characterization of events. DCS asserts that while it tried to keep providing

services during the imprisonment, it could not offer the same services it provided before Father's incarceration. DCS further claimed that Father did not contact DCS about reunification until December 2021, 14 months after the start of the dependency. Finally, a DCS case manager testified that she and Father agreed that visitation and phone calls would not be beneficial because James was nonverbal, and it would not make sense to bring an infant to a prison.

¶18        Given the conflicting evidence, the juvenile court was within its discretion to find that Father had not requested visitation. We do not reweigh evidence on appeal. The juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004).

¶19        The second of Father's arguments contesting the 15-month severance ground is meritless. The evidence shows that Father "will not be capable of exercising proper and effective parental care and control in the near future." Along with his history of methamphetamine use, the court found several reasons why Father may struggle to exercise parental care:

> [Father] has failed to establish and maintain a bond with [James], he has not completed many of the required services in this case, and his conviction for domestic violence against [Mother] will make it difficult for him to obtain custody of [James] and provide [James] with a normal home and normal parent-child relationship once he is released from custody.

¶20        We conclude that the juvenile court did not abuse its discretion by terminating Father's parental rights under A.R.S. § 8-533(B)(8)(c). Because we find that sufficient evidence supports the time-in-care ground for termination, we need not consider the § 8-533(B)(4) ground. *Jesus M.*, 203 Ariz. at 280, ¶ 3.

**C.    Sufficient Evidence Supports the Court's Finding that Termination of Mother's and Father's Rights Served James's Best Interests.**

¶21        "Whether severance is in the child's best interests is a question of fact for the juvenile court to determine." *Jesus M.*, 203 Ariz. at 282, ¶ 13. "We view the evidence, and draw all reasonable inferences from it, in favor of supporting the findings of the trial court." *Id.* The child's best interests in a termination proceeding may be established "by either showing an affirmative benefit to the child by removal or a detriment to the child by

continuing in the relationship." *Jennifer B. v. Ariz. Dep't of Econ. Sec.*, 189 Ariz. 553, 557 (App. 1997).

¶22        The juvenile court found that James is "adoptable" and that DCS was "seeking an adoptive placement for him." The court was persuaded that adoption at a young age offers a possibility for a "safe, stable, and permanent home" and was in James's best interests. Considering Mother's addiction, Father's incarceration, and the failure of either parent to engage in reunification services successfully, we conclude that severance is reasonably supported by the evidence and will not disturb the juvenile court's findings.

**CONCLUSION**

¶23        We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA