NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO C.K.

No. 1 CA-JV 22-0201
FILED 3-2-2023

---

Appeal from the Superior Court in Maricopa County
No. JD39129
The Honorable Todd F. Lang, Judge

**AFFIRMED**

---

COUNSEL

David W. Bell Attorney at Law, Higley
By David W. Bell
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Jennifer R. Blum
*Counsel for Appellee Department of Child Safety*

—————————————————

**MEMORANDUM DECISION**

Presiding Judge David D. Weinzweig delivered the decision of the Court, in which Judge Randall M. Howe and Judge D. Steven Williams joined.

—————————————————

**W E I N Z W E I G**, Judge:

¶1            Stephanie M. ("Mother") appeals the superior court's order terminating her parental rights to C.K. ("Child").  We affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2            Mother is the biological parent of Child, born in October 2009. The Department of Child Safety ("DCS") removed Child from Mother's care after Mother was hospitalized for mental illness in February 2019.  At that time, Mother warned that she and Child were being "hunted," and reported that voices in her head told her to "cut her and [Child's] wrist[s]."  Child was placed in a foster home and Mother did not contest the dependency petition.

¶3            Over the next three years, DCS provided Mother with two psychological evaluations, two psychiatric evaluations, medication monitoring, individual therapy, three parent-aide referrals, parenting classes, and visitation.  Mother closed out unsuccessfully from all three referrals for parent-aide services, and she never completed individual therapy.  She often denied having mental health problems and refused to take her prescribed medication.

¶4            Mother denied any history of mental illness at the first psychological evaluation in March 2019 and declined psychotropic medication. The psychologist concluded that Child was "at an elevated risk for neglect, including failure to protect; emotional abuse; behavioral issues due to a dysfunctional milieu; involvement in delusions; [and] shared delusions," adding that "physical harm" was possible "if the client acts on her hallucinations and/or delusions," and psychiatric treatment "appeared to be critical" to Mother's stability.  That same month, a psychiatrist diagnosed Mother with borderline personality disorder and post-traumatic stress disorder.

¶5            At the second psychological evaluation in April 2021, a psychologist reported that Mother had "significant thought dysfunction,"

generalized anxiety disorder, and "traits of schizoid and paranoid personality."

**¶6** The psychologist recommended that Mother engage in Ph.D.-level counseling, which Mother started in February 2022. The Ph.D.-level therapist diagnosed Mother with paranoid personality and delusional disorders. Mother attended therapy for several months before the termination hearing, but she struggled to control her outbursts and did not recognize her delusions.

**¶7** In March 2022, DCS moved to terminate Mother's parental rights on grounds of mental illness and fifteen-months out-of-home placement. The court held a termination hearing in June 2022 and terminated Mother's parental rights on both grounds. The court also found DCS made reasonable efforts to provide reunification services. Mother appealed. We have jurisdiction. *See* A.R.S. §§ 8-235(A), 12-120.21(A)(1), -2101(A)(1).

## DISCUSSION

**¶8** A parent's right to custody and control of her child is fundamental but not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248–49, ¶¶ 11–12 (2000). To terminate parental rights, the superior court must find at least one statutory ground under A.R.S. § 8-533(B) by clear and convincing evidence, and must find that termination is in the child's best interests by a preponderance of the evidence. *Id.* at 249, ¶ 12.

**¶9** Moreover, when moving to terminate a parent-child relationship on grounds of out-of-home placement, DCS must prove it "made a diligent effort to provide appropriate reunification services." A.R.S. § 8-533(B)(8). To satisfy this requirement, DCS must "undertake measures with a reasonable prospect of success" and "provide a parent with the time and opportunity to participate in programs designed to improve the parent's ability to care for the child." *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶¶ 34, 37 (App. 1999).

**¶10** Mother contends that DCS did not make diligent reunification efforts. We will affirm the court's decision if supported by reasonable evidence, *Jennifer B. v. Ariz. Dep't of Econ. Sec.*, 189 Ariz. 553, 555 (App. 1997), and accept the court's factual findings if reasonable evidence supports them, *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3, ¶ 9 (2016).

**¶11** The superior court found that Mother received ample services in this case, and that DCS has "made repeated, sincere and serious efforts

to provide [her] with the services needed for her to address her mental health issues and parenting skills deficiencies," but that "Mother has failed to take advantage of these opportunities and has failed to make significant progress."

¶12 The record has reasonable evidence to support these findings. DCS provided Mother with a multitude of services over the three-year dependency, each designed to give Mother insight into her mental health and parenting issues. Mother resisted many of the services. She denied or minimized her mental illness, and either refused medication or took it inconsistently, which prevented her from being able to regulate her emotions.

¶13 Mother stresses that she received only four months of Ph.D.-level counseling before termination, but we examine the services Mother received over the entire dependency. *See Donald W. v. Dep't of Child Safety*, 247 Ariz. 9, 26, ¶ 69 (App. 2019) ("[T]he court was required to examine not only the final months but the entire dependency."). Beyond that, Mother was often erratic during those counseling sessions and refused to acknowledge her mental health issues. The Ph.D. therapist testified that Mother did not show progress.

## CONCLUSION

¶14 We affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA