NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE GUARDIANSHIP OF P.J.

No. 1 CA-JV 23-0076
FILED 8-29-2023

Appeal from the Superior Court in Maricopa County
No. JD531170
The Honorable Robert Ian Brooks, Judge

**AFFIRMED**

COUNSEL

David W. Bell Attorney at Law, Higley
By David W. Bell
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Jennifer R. Blum
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Vice Chief Judge Randall M. Howe delivered the decision of the court, in which Judge Jennifer M. Perkins and Judge Daniel J. Kiley joined.

---

H O W E, Judge:

¶1            Frank J. ("Father") appeals the juvenile court's order granting permanent guardianship of his child, P.J., to the child's paternal grandmother ("Grandmother"). For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2            We view the facts in the light most favorable to sustaining the juvenile court's order. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 2 ¶ 2 (2016). Father and Sarafina H. ("Mother") are the biological parents of P.J. and were never married.[1] The parents had a history of domestic violence.

¶3            In 2015, the Department petitioned to find P.J. dependent as to both Father and Mother for abuse or neglect. Because Mother engaged in services, the juvenile court dismissed the dependency. The court granted Mother sole legal decision-making authority with Father having supervised visitation. In 2017, the Department again petitioned to find P.J. dependent as to both parents for neglect. The Department alleged that P.J. had been residing with Grandmother for an extended period. The court dismissed the dependency the following year because the parents agreed that Grandmother would be P.J.'s caretaker.

¶4            In 2021, P.J.'s school notified the Department that he had "marks and bruises" on his face and arms. During a forensic interview, P.J. said that Father had hit him with a "charger cord" because he was mad. Doctors confirmed that P.J.'s injuries were consistent with his statement. P.J. also revealed that Father had told him not to tell his teachers or police and to say "his brother did it" although no other child lived in the household. Father was arrested and charged with child abuse. He admitted hitting P.J. because the child had placed food under the couch. Father

---

[1]      Mother did not contest the guardianship and is not a party to this appeal.

agreed to complete a parenting skills program, and after completion, the court dismissed the case.

¶5         Because the Department still had concerns about Father's drug and alcohol abuse and his history of domestic violence and mental health issues, it again petitioned to find P.J. dependent as to Father because of abuse. The court found P.J. dependent as to Father and set the case plan for reunification. During the dependency proceeding, P.J. continued living with Grandmother.

¶6         The Department offered Father services, including parenting skills, substance abuse assessment and treatment, behavioral health assessment and treatment, visitation, and parent aide classes. Father sporadically participated in drug testing. He tested positive for cocaine multiple times between November 2021 and May 2022. He also tested positive for EtG (alcohol) and THC (cannabinoids), with EtG levels indicating that "he would be impaired and unable to safely parent" P.J. Also, Father declined substance-abuse treatment, claiming that he did not have time. Eventually in April 2022, he participated in a substance-abuse treatment intake but engaged in the treatment inconsistently. Father first had to complete substance-abuse treatment before he could undergo anger management and domestic violence treatment. But he failed to complete substance-abuse treatment and did not show a sufficient period of sobriety. In addition, Father was unable to participate consistently in visits because his work schedule interfered with his appointments. Because Father was not close to remedying his substance abuse, domestic violence, and parenting issues, the Department moved to change the case plan to permanent guardianship. The court changed the case plan to permanent guardianship and ordered the Department to move to appoint a guardian.

¶7         The Department moved to appoint Grandmother as P.J.'s permanent guardian. The court held an evidentiary hearing on the motion. The Department's child safety specialist testified that the Department was still concerned about Father's substance abuse. She also testified that Grandmother and P.J. had a strong bond and that he was doing well in her care. She added that Grandmother allowed Father visitation and contact with P.J. Father testified to using cocaine several times but was working on quitting. He also testified that his cocaine use would not affect his ability to parent P.J.

¶8         The court granted the motion and found that the Department made reasonable efforts to reunite the parents and P.J. but that "further efforts would be unproductive." The court found that reunification was not

in P.J.'s best interests because the parents could not properly care for him. The court found that Father's "inappropriate discipline and inability to meet the child's basic needs was due to his use of substances." The court also found that Father struggled with "understanding the significance of his actions and the safety threat physical abuse poses for [P.J.]" The court also found that Father did not remedy the circumstances that led to P.J.'s removal because he continued using substances, including cocaine, even after the court had changed the case plan to guardianship. The court found that this demonstrated that he would "continue to use for a prolonged and indeterminate period." As a result, it found that reunification efforts would be futile because Father "minimally participated" in substance abuse testing and treatment. The court concluded that granting the guardianship was in P.J.'s best interests because P.J. and Grandmother were bonded and P.J. would not linger in care while Father "continue[d] intermittent engagement in services." Granting the guardianship, the court added, would provide the parents more time to remedy these concerns while Grandmother continued to foster the parents' relationship with P.J. Father timely appealed.

## DISCUSSION

¶9 Father argues that the juvenile court erred in finding that further efforts to reunite him with P.J. would be unproductive. As the moving party, the Department has the burden to prove the statutory grounds to establish a permanent guardianship by clear and convincing evidence. A.R.S. § 8–872(H). Because the juvenile court was in the "best position to weigh the evidence, judge the credibility of the parties, observe the parties, and make appropriate factual findings," *In re Pima Cnty. Dependency Action No. 93511*, 154 Ariz. 543, 546 (App. 1987), we will affirm the juvenile court's order granting permanent guardianship unless the factual findings are clearly erroneous, *see Jennifer B. v. Ariz. Dep't of Econ. Sec.*, 189 Ariz. 553, 555 (App. 1997). The findings are clearly erroneous if no reasonable fact finder could have found that the evidence satisfied the applicable burden of proof. A.R.S. § 8–872(H); *Jennifer B.*, 189 Ariz. at 555.

¶10 The court may establish a permanent guardianship if in the child's best interests and (1) the child was adjudicated dependent; (2) the child has been in the custody of the prospective permanent guardian for at least nine months; (3) the Department has made reasonable efforts to reunite the parent and child and further efforts would be unproductive; and (4) severance and adoption would not be in the child's best interests. A.R.S. § 8–871(A). In examining whether the court properly determined that further reunification efforts would be unproductive, we review whether the

court properly determined that the Department made reasonable efforts to reunify Father and P.J. A.R.S. § 8–872(H). The Department need not provide parents "every conceivable service" but should offer them time and opportunity to participate in services to improve their ability to care for their child. *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192 ¶ 37 (App. 1999). The court's primary consideration must be the child's "physical, mental, and emotional needs and safety." A.R.S. § 8–871(D).

¶11 The juvenile court did not err. The record shows that the Department made reasonable efforts to reunify Father and P.J. and that further efforts would be unproductive. The Department provided Father with substance-abuse treatment, testing, and supervised visitation for over one year. Yet he did not participate in the services consistently. He participated only in a few drug tests, which were positive for cocaine and alcohol. He failed to demonstrate a period of sobriety, even after the case plan changed to permanent guardianship, although he knew that it was required to regain custody of P.J. Further, failing to participate in and complete substance-abuse treatment prevented him from treatment for domestic violence and anger management. Thus, because Father did not demonstrate consistent sobriety or participation in services, further reunification efforts would have been unproductive. *See Mary Ellen C.*, 193 Ariz. at 187 ¶ 1, 192 ¶ 34 (holding that the Department is not required to undertake futile measures but ones with a "reasonable prospect of success").

¶12 Father does not contest the court's best interests finding, and thus concedes it. *See Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249 ¶ 13 (2000). Nevertheless, reasonable evidence supports the court's finding that the permanent guardianship is in P.J.'s best interests. P.J. has lived with Grandmother for many years. He has bonded with Grandmother and is doing well in her care. The record supports that a guardianship would provide for P.J.'s physical, mental, and emotional needs and safety.

¶13 Father argues that his use of alcohol and cocaine does not present a danger to P.J. The record, however, shows that historically, Father's substance abuse had led him to physically abuse P.J. His levels of intoxication when he tested positive for alcohol indicated that he was impaired and would be unable to safely care for P.J. His inability to understand that substance abuse posed a danger to P.J. is apparent from the record.

¶14 Father argues that the court was inconsistent in finding that he would benefit from additional time to make behavioral changes while

further reunification efforts would be futile. The findings are not inconsistent, however. The court found that Father's continued substance abuse during the dependency showed that he would be using "for a prolonged and indeterminate period." It also found that the permanent guardianship would provide P.J. with permanency "while Father continue[d] his intermittent engagement with services." Prolonging the dependency proceedings pending further reunification efforts would be futile because Father did not timely remedy his substance abuse to safely parent P.J. Granting the guardianship would allow P.J. permanency and provide Father more time to remedy the Department's concerns. Further, Father's parental rights have not been terminated. *See* A.R.S. § 8–872(I). A guardianship can be revoked upon a change of circumstances. *See* A.R.S. § 8–873(A).

¶15    Father argues last that the juvenile court did not make "sufficiently specific findings," which violated his due process rights. Further, he contends that the court "deviated from its own stated intent" in signing the Department's form of judgment granting the guardianship instead of making its own findings of fact in a separate minute entry as it had ordered. A party may move the court to alter or amend a final order for sufficient findings of fact but must do so within 12 days after entry of the final order. Ariz. R.P. Juv. Ct. 317(a). Father did not do so and has thus waived this argument on appeal. *See Francine C. v. Dep't of Child Safety*, 249 Ariz. 289, 296 ¶ 17 (App. 2020) ("When a court fails to comply with a *rule* that mandates findings, a party who does not raise the issue in an authorized post-judgment motion may waive it on appeal.").

¶16    Even so, the court made sufficient factual findings in its final order. The court found that P.J. lived with Grandmother for at least nine months as a dependent child. The court found that Father had physically abused P.J. and admitted to abusing cocaine and alcohol. The court found that the Department offered Father services, in which he "minimally participated." Further, the court found that Father continued to abuse substances, including cocaine, even after the court changed the case plan to guardianship. It even found the guardianship was in P.J.'s best interests because P.J. and Grandmother were bonded, and P.J. would not linger in care while Father "continue[d] intermittent engagement in services." These findings were therefore sufficient. *See Ruben M. v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 236, 240 ¶ 24 (App. 2012) (noting that the "primary purpose for requiring a court to making express findings of fact and conclusions of law is to allow the appellate court to determine exactly which issues were decided and whether the lower court correctly applied the law").

¶17 Further, nothing prevented the juvenile court from adopting the Department's proposed findings and conclusions. *See* A.R.S. §§ 8–871, –872; Ariz. R.P. Juv. Ct. 346. A court "may adopt proposed findings that the parties submit" as long as "those findings are consistent with the ones that it reaches independently after properly considering the facts." *Elliott v. Elliott*, 165 Ariz. 128, 134 (App. 1990). The record demonstrates that the court independently made its own factual findings. At the end of the evidentiary hearing, the court explained that it would "make sure to read every page of every exhibit" before making a decision. The court issued the order about one month later. Even if the court did not set forth its own separate minute entry, the court clearly considered the exhibits before it in rendering its decision. We may infer that the court made "whatever additional findings are necessary to sustain its judgment" if those findings "are reasonably supported by the evidence and do not conflict with any of the court's express findings." *Francine C.*, 249 Ariz. at 297 ¶ 19. Because reasonable evidence supports the juvenile court's order, the court did not err.

**CONCLUSION**

¶18 For the foregoing reasons, we affirm.

