NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE GUARDIANSHIP OF J.B.

No. 1 CA-JV 25-0080

FILED 12-17-2025

---

Appeal from the Superior Court in Maricopa County
No. JG512398
The Honorable Jay M. Polk, Judge

**AFFIRMED**

---

COUNSEL

Crystal Huggins, Chandler
*Appellant*

Maricopa County Legal Defender's Office
By Jamie R. Heller
*Counsel for Appellee, Jasmine K.*

Maricopa County Office of the Legal Advocate, Phoenix
By Amanda L. Adams
*Counsel for Child, J.B.*

---

**MEMORANDUM DECISION**

Judge Brian Y. Furuya delivered the decision of the Court, in which Presiding Judge Angela K. Paton and Judge Daniel J. Kiley joined.

---

**F U R U Y A**, Judge:

**¶1**        Crystal H. ("Former Guardian") appeals the juvenile court's order terminating her guardianship of J.B. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**        J.B. was born in July 2008 to Jasmine K. ("Mother"). Former Guardian was granted permanent guardianship of J.B. in March 2015 by a Georgia court upon her private petition. The Georgia court found that J.B. and his older sibling could not be "adequately and safely protected at home" because Mother, "on a habitual basis, deposit[ed] the children with [Former Guardian] and [did] not retrieve the children for long periods of time (at least weeks), [and because] she [had] no known housing or ability to provide for the children."

**¶3**        In the two years following Former Guardian's appointment, Mother maintained contact with the children and the children visited Mother's home for short periods of time. Then, in 2018, the children and Former Guardian relocated to Arizona. Mother attempted to maintain contact with the children in the ensuing years, but Former Guardian was not always responsive. J.B.'s sibling also testified that the children did not want to contact Mother "between 2020 and 2024" because they were upset that she had given birth to four other children.

**¶4**        But in the summer of 2024, Former Guardian and Mother began to discuss transitioning J.B. to live with Mother in Georgia, and Mother and J.B. began to talk several times a week. Mother obtained a larger home by the end of 2024 so that J.B. could have his own room when he returned to her care. In January 2025, Former Guardian told the Department of Child Safety ("DCS") that she could no longer care for J.B. due to his behavioral issues. Consequently, DCS took temporary custody of J.B., placed him in a group home, and initiated an out-of-home dependency with the juvenile court in Arizona. At a Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") conference held in late January 2025, the

Georgia court relinquished jurisdiction to Arizona as the most convenient forum.

¶5 DCS began an investigation in conjunction with the dependency. As part of that investigation, a DCS caseworker spoke with J.B. and Mother, and J.B. told DCS that he wanted to return to Mother's care in Georgia and did not want to return to Former Guardian's home. Mother reported having stable housing and employment in Georgia and that she had successfully been parenting three of her younger children.

¶6 The next month, Mother petitioned the juvenile court to revoke J.B.'s guardianship. She alleged she was "able and willing to properly care" for J.B. because she had maintained stable housing, could accommodate him in her home, was financially capable, and had "identified educational and behavioral health resources for [J.B.] should they be needed." Mother also alleged that Former Guardian was unable to properly care for J.B. and that revocation would serve J.B.'s best interests.

¶7 The court held a two-day hearing on Mother's petition in May 2025. Following the hearing, the court issued a signed order granting Mother's petition to revoke the guardianship. The court found Mother had proven, by clear and convincing evidence, that a "change of circumstance had occurred since [Former Guardian] was appointed as guardian of the child" and that Mother was now "able and willing to parent the child." Former Guardian timely appealed and we have jurisdiction under Arizona Revised Statutes ("A.R.S.") Sections 8-235(A), 12-120.21(A)(1), and -2101(A)(1).

## DISCUSSION

I. **Former Guardian's Brief Does Not Comply with the Arizona Rules of Civil Appellate Procedure ("ARCAP") and She Has Waived All Issues That Cannot Be Discerned.**

¶8 Pursuant to the rules governing appeals, an appellant's opening brief requires, among other things, a statement of the background facts, the issues presented for appeal, and an "argument" containing the appellant's contentions. ARCAP 13(a)(5)–(7). An appellant's argument must also include citations to supportive legal authorities, references to the record, and a statement of the appropriate standard of review. ARCAP 13(a)(7)(A)–(B). "An appellant who fails to make a bona fide and reasonably intelligent effort to comply with the rules will waive issues and arguments not supported by adequate explanation, citations to the record, or authority." *Ramos v. Nichols*, 252 Ariz. 519, 522 ¶ 8 (App. 2022) (citation

3

modified). Pro se litigants are held to the same standards as attorneys and are not afforded any special leniency. *Id.*

**¶9**        Former Guardian failed to comply with these requirements. Former Guardian's brief fails to provide even a single citation to any legal authority and there are minimal citations to the record. Moreover, Former Guardian's arguments in her opening brief are difficult to discern. For example, Former Guardian complains that "[Mother] mentioned getting food stamps as a source of income even when she didn't have [J.B.]" Mother's receipt of food stamps is irrelevant to her willingness and ability to care for J.B. Thus, Former Guardian has not made a "bona fide and reasonably intelligent effort" to comply with ARCAP 13's requirements. *Id.* Because of her brief's grave deficiencies, Former Guardian's failure to comply with ARCAP 13 may be treated as a waiver of all issues and the juvenile court's order may be affirmed. *Id.* at 523 ¶ 11.

**¶10**        Nevertheless, "the decision to apply waiver is discretionary." *In re E.C.*, ___ Ariz. ___, ___, 1 CA-JV 24-0203, 2025 WL 2810785, at *3 ¶ 17 (App. Oct. 3, 2025) (citation modified). As to those of her arguments that can be discerned, though they are non-compliant, we decline to apply waiver because a child's best interests are at stake. *Id.* ("When the best interests of the child are at stake, the court generally will not apply waiver."). We address these below. However, as to those arguments that are not stated with sufficient clarity to allow for any meaningful review, Former Guardian has waived these arguments. *Ramos*, 252 Ariz. at 523 ¶ 11.

## II.    The Juvenile Court's Findings Are Supported.

**¶11**        We will uphold an order granting a petition to revoke a guardianship absent an abuse of discretion. *See Jennifer B. v. Ariz. Dep't of Econ. Sec.*, 189 Ariz. 553, 555 (App. 1997). And we do not reweigh conflicting evidence or reevaluate the credibility of witnesses on appeal. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 151–52 ¶¶ 18–20 (2018). Instead, we view the evidence and reasonable inferences in the light most favorable to affirming the juvenile court's order, *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 479 ¶ 32 (2023), and will affirm its findings "unless no reasonable evidence supports those findings," *Jennifer B.*, 189 Ariz. at 555.

**¶12**        "The court may revoke the order granting permanent guardianship . . . if the party petitioning for revocation proves a change of circumstances by clear and convincing evidence and the revocation is in the child's best interest." A.R.S. § 8-873(C). A significant change of circumstances may include evidence that "[t]he child's parent is able and

willing to properly care for the child" or that "[t]he child's permanent guardian is unable to properly care for the child." A.R.S. § 8-873(A)(1)–(2).

¶13        Here, Former Guardian appears to argue that the court erred because Mother allegedly established "no stability/proof of income." But there is sufficient evidence to support the court's finding that Mother was able and willing to properly care for J.B. at the time of the hearing, which was a significant change of circumstances since the Georgia court's decision to issue the guardianship. Mother testified that since the Georgia court's decision, she had maintained stable housing for the last ten years, and in 2024, she had obtained a larger home so that J.B. could have his own room. She also testified that she was parenting her other minor children and had sufficient income, in addition to receiving support from family members if needed. Because the court expressly found that "Mother is able and willing to parent the child," we presume that the court found her testimony credible and we will not reweigh the evidence on appeal. *Alma S.*, 245 Ariz. at 151 ¶ 18.

¶14        The evidence also supports the court's finding of a change of circumstances because Former Guardian was no longer able or willing to care for J.B. due to his behavioral issues. *See Maria G. v. Dep't of Child Safety*, 253 Ariz. 364, 366 ¶ 9 (App. 2022) (recognizing that a guardian's inability to properly care for a child is a significant change of circumstance).

¶15        In January 2025, Former Guardian contacted DCS to report that she could no longer care for J.B. Following her call, DCS initiated a dependency proceeding and placed J.B. in a group home, where he remained until the revocation of guardianship. Former Guardian testified that she would not be willing to have J.B. back in her home unless he was willing to participate in counseling, and J.B. was not willing to do so. The DCS caseworker testified that if the court denied the revocation, J.B. would likely remain in a group home until he turned eighteen because DCS was not planning to reunify him with Former Guardian. Therefore, Former Guardian was unable and unwilling to care for J.B.—a ground for finding a change in circumstances. *Id.*

¶16        Further, reasonable evidence supports the court's finding that revocation would serve J.B.'s best interests. The court found that given J.B.'s age, maturity, and intelligence he was able "to advocate on his own behalf and protect himself," and the DCS caseworker testified that J.B. had expressed a desire to return to Mother's care. The caseworker also testified that DCS "[didn't] see any reason why [J.B.] shouldn't return to [Mother,]" as Mother had housing in Georgia and was safely parenting her younger

children. Former Guardian's mother, Nancy H., also testified that it would be in J.B.'s best interests to return to Mother's care because as J.B. had matured, the relationship between Former Guardian and J.B. had deteriorated.

¶17 Thus, the court considered the evidence presented and it was in the best position to weigh it. *Brionna J.*, 255 Ariz. at 478 ¶ 30. We discern no error in the court's findings.

### III. The Court Did Not Otherwise Abuse Its Discretion.

¶18 Former Guardian seems to argue that the court abused its discretion because its order terminating J.B.'s guardianship conflicted with one entered by the Georgia court eight months before. True, Georgia initially had jurisdiction over J.B.'s guardianship, but it later ceded that jurisdiction to Arizona as the more convenient forum under the UCCJEA. *See* A.R.S. §§ 25-1032 to -1033, -1063. Thus, Georgia's prior rulings do not control Arizona's consideration of the question.

¶19 Former Guardian criticizes the juvenile court's alleged failure to obtain a favorable home study of Mother's home under the Interstate Compact on the Placement of Children ("ICPC") to support its finding of a change of circumstances. But Arizona does not require an out-of-state parent to obtain a favorable ICPC home study before granting that parent's petition to revoke a permanent guardianship. *See* A.R.S. § 8-873(C); *see also* Ariz. R.P. Juv. Ct. 349(f)–(g). As such, absence of an ICPC study, by itself, does not thwart a finding of significant change of circumstances. Therefore, the court did not abuse its discretion in finding that revocation of the guardianship was justified following a change in circumstances.

### CONCLUSION

¶20 We affirm.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**: JR

6